Michael D. VAN ETTEN and Kim Van Etten, as parents of Daniel Paul Van Etten and Michael D. Vane Etten and Kim Van Etten, as co-administrators of the estate of Daniel Paul Van Etten, Plaintiffs,

v.

BRIDGESTONE/FIRESTONE, INC., and Ford Motor Company, Defendants.

No. Civ.A. CV298069.

United States District Court, S.D. Georgia, Brunswick Division.

Sept. 27, 2000.

& Gregory, LLP, Atlanta, GA, for Chicago Tribune Company, intervenor-plaintiff.

Lisa Godbey Wood, Gilbert, Harrell, Gilbert, Sumerford & Martin, PC, Brunswick, GA, Kenneth J. Moran, McGuire, Woods, Battle & Boothe, Richmond, VA, Alfred B. Adams, III, Caroline Johnson Tanner, Holland & Knight, LLP, Atlanta, GA, for Bridgestone/Firestone, Inc., defendant.

Arnold C. Young, Hunter, Maclean, Exley & Dunn, Savannah, GA, Earl W. Gunn, Christopher J. Graddock, Weinberg, Wheeler, Hudgins, Gunn & Dial, LLP, Atlanta, GA, D. Alan Thomas, Huie, Fernambuco & Stewart, Birmingham, AL, Paul F. Hultin, Michael L. O'Donnell, Lee Allen Mickus, Wheeler, Trigg & Kennedy, Denver, CO, Charles K. Reed, Cabaniss, McDonald, Smith & Wiggins, Atlanta, GA, for Ford Motor Company, Inc., defendant.

J. Thomas Whelchel, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, Kevin T. Baine, Mary–Rose Papandrea, Williams & Connolly, LLP, Washington, DC, for The Washington Post Company, movant.

Jerome L. Kaplan, Arnall, Golden & Gregory, LLP, Macon, GA, Robert L. Rothman, Arnall, Golden & Gregory, LLP, Atlanta, GA, for Los Angeles Times Communications LLC, dba, Los Angeles Times, movant.

### ORDER

ALAIMO, District Judge.

The consolidated intervention motions of the Chicago Tribune Co., Washington Post Co., CBS Broadcasting, Inc., and Los Angeles Times Communications, LLC (the "Media Intervenors"), raise important issues regarding the public's right of access to court records filed in the context of a civil case. Specifically, the Media Intervenors seek permissive intervention in the case at bar pursuant to Federal Rule of Civil Procedure 24(b). The purpose of their motions to intervene is to ask the Court to unseal records filed with the Clerk of Court pursuant to a protective order stipulated to by the parties of the underlying case. The Media Intervenors

James B. Franklin, Daniel B. Snipes, Franklin, Taulbee, Rushing & Brogdon, PC, Statesboro, GA, Wallace M. Brogdon, Jr., Statesboro, GA, for Michael D. Van Etten, as parent of Daniel Paul Van Etten and as co-administrator of the estate of Daniel Paul Van Etten, plaintiff.

Jerome L. Kaplan, Arnall, Golden & Gregory, LLP, Macon, GA, Roger A. Chalmers, Robert L. Rothman, Arnall, Golden

ask on behalf of the public at large for access to the public record for the reasons stated below. The Media Intervenors' consolidated Motions to Intervene will be **GRANTED** as will their consolidated Motions to Unseal Court Records and. for Access in the Record.

### FACTS

In April 1998, Michael D. and Kim Van Etten filed a civil suit in the Brunswick Division of the United States District Court for the Southern District of Georgia claiming that Bridgestone/Firestone, Inc. ("Bridgestone/Firestone"), and the Ford Motor Co. ("Ford"), were responsible for the death of their son, Daniel Paul Van Etten.

The Van Ettens claimed that while on a drive from Florida back to West Virginia University, "the tread on the left rear tire of (the Ford Explorer Van Etten was driving) separated from the remainder of the tire without warning." As a result, the Ford Explorer "began to roll over and flip." Their son, Daniel Paul Van Etten, was "thrown and ejected out of the vehicle and ultimately landed on the pavement of the northbound lane of Interstate 95." He died from his injuries, described as "blunt head trauma."

The tire was made by Bridgestone/Firestone.

The Van Ettens claimed that Bridgestone/Firestone and Ford were jointly and serverably liable for $21 million in damages for the value of the life of the West Virginia University student and football player, for his pain and suffering, and for medical and funeral expenses. Specifically, the Complaint alleged that both Bridgestone/Firestone and Ford were liable because of their negligence in the design,

manufacturing, testing and inspection, and failure to warn about the dangerousness of the tires and the vehicle, respectively.

Early in the case, all parties consented to two Stipulated Protective Orders, alleviating the need for the Court to rule on numerous motions to protect and shield certain materials from public dissemination and view during a broad, searching discovery.[1] Under the respective Stipulated Protective Orders, Bridgestone/Firestone and Ford were able to designate certain materials produced during discovery as "confidential." Plaintiffs could challenge these confidential designations which would result in Defendants having the burden to prove to the Court that the material should be protected. If Plaintiffs made no objection, however, the designated material would simply be confidential and subject to the applicable Stipulated Protective Order. These confidential documents could be disclosed only to a limited number of people, including: (1) the Plaintiffs' attorneys and staff, (2) the Plaintiffs' experts and consultants; and (3) the Court and its staff.

Although the primary purpose of the two Protective Orders was the same—namely, to insure that documents obtained through a broad, searching discovery would not necessarily be disseminated to the public at large there is a significant difference between the two Stipulated Protective Orders. The Bridgestone/Firestone Stipulated Protective Order not only protects the documents during pretrial discovery but also contains provisions instructing that confidential Bridgestone/Firestone material had to be sealed when filed with the Court in connection with a pleading, motion, or other filing.[2]

---

1. The first Stipulated Protective Order was filed with the Court on August 12, 1998. This Protective Order applies to material and/or information designated by Bridgestone/Firestone, Inc. as confidential.

The second Stipulated Protective Order was filed with the Court on October 1 1998, the Second Stipulated Protective Order applied to materials produced by Ford during discovery which contain confidential information.

2. The pertinent part of the first Stipulated Protective Order states:

b   In the event that counsel for the Plaintiffs determines to file in or to submit to the Court (a) the Confidential Documents or any information derived therefrom or (b) any papers containing or making any reference to such information, such document(s) shall be filed only in sealed envelopes on

Such protection—beyond discovery and remaining even when documents became part at the Court record—is not present in the Second Stipulated Protection Order which protects Ford documents. See Second Stipulated Protective Order. As a result, only Bridgestone/Firestone materials were filed under seal with the Court.

Although the Van Etten case was active for more than a year and a half, it never went before a jury. Instead, the parties settled the case under confidential terms in November of 1999. Prior to the settlement, hundreds of docket entries were made in the Van Etten case. Normally, these filings would have been public record, available for all to see in the Clerk's Office. However, many of the filings were sealed away from public access and view because of the Bridgestone/Firestone Stipulated Protective Order. Furthermore, even after the case settled, the Stipulated Protective Order remained, continuing to seal off much of the record from public view and scrutiny.

Under normal circumstances, it is doubtful anyone would ever have looked at, or even asked to look at the Court records from the Van Etten case after it settled. But in August 2000, Bridgestone/Firestone recalled more than six million tires after reports showed that numerous accidents were linked to a defect that caused the tread to separate from the tire. These defective Bridgestone/Firestone tires were installed on Ford Explorers and other sport utility vehicles.

The media profiled how these Bridgestone/Firestone tire tread separation accidents caused countless injuries and, at latest count, 103 fatalities. In fact, the Bridgestone/Firestone tire tread separation defect and resulting recall has been front-page above-the-fold news for several months, and the media coverage has been escalating. Congress is also investigating the Bridgestone/Firestone tire tread separation defect. Both the House and Senate Commerce Committees have held hearings, questioning how long Bridgestone/Firestone and Ford knew there was a problem.

Thus, the public and media interest in cases such as the *Van Etten* case involving allegedly defective Bridgestone/Firestone tires and/or Ford Explorers is substantial, and deservedly so, because the use of defective automobile tires linked to numerous deaths raises serious public health and safety concerns.

Soon after Bridgestone/Firestone recalled the more than six million tires thought to be affected by the tire tread separation defect, four national media organizations and the Attorney General of the State of Florida asked this Court to intervene for the sole purpose of unsealing the Court records shielded from public access and view because of the Bridgestone/Firestone Stipulated Protective Order. Ford responded by agreeing that any of Ford's documents that were filed under seal with the Court could be opened. Likewise, Bridgestone/Firestone stipulated to opening many of the records it had caused to be filed under seal.

Currently before the Court are the intervention motions made by the Media Intervenors to open the remaining sealed court records in this case. The Media Intervenors make these motions so that the public will have access to and be able to scrutinize a case involving important

---

which shall be endorsed the style of this action and a statement in the following form:

CONFIDENTIAL

This envelope contains statements that are subject to a Protective Order governing discovery and the use of confidential discovery material entered by the Court (a) action. This envelope shall not be opened or the contents thereof displayed or revealed except by Order of the Court.

6 Any disclosure of the Confidential Documents and/or information contained therein any court proceeding herein either than the trial in chief, shall be made *in camera* unless the Court orders otherwise, provided, however, that nothing contained within the Order shall affect the admissibility of the Confidential Documents at any hearing or trial before the Court or a jury. Stipulated Protective Order 5–6.

information about the Bridgestone/Firestone tire tread separation defect, which raises serious public health and safety concerns. Bridgestone/Firestone challenges the timeliness of the motions to intervene, as well as the right to unseal the records.

## MOTIONS TO INTERVENE

■■■ There is simply no question that "[t]he press has standing to intervene on actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *In re Petition of Tribune Co.*, 784 F.2d 1518, 1521 (11th Cir.1986). Nevertheless, Defendant, Bridgestone/Firestone, objects to the fact that "[n]one of the potential intervenors has made any showing that its motion is timely as required by [Federal Rule of Civil Procedure] 24(b)." The Court disagrees and finds that the intervenors timely filed their intervention motions. Therefore, the Court will **GRANT** the Intervenors permission to intervene in this case for the reasons which follow.

■■■ The case of *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir.1977)[3] "set forth four factors for use as guidelines in determining the timeliness of a motion to intervene pursuant to Rule 24(b)." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015 (11th Cir.1992). Specifically, the Court examines:

(1) the length of time during which the would be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene.

(2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it actually knew or reasonably should have known of its interest in the case.

(3) the extent of the prejudice that the would be intervenor may suffer if its

petition for leave to intervene is denied; and

(4) the existence of unusual circumstances imitating either for or against a determination that the application is timely.

*See Meek v. Metropolitan Dade County, Fla.*, 985 F.2d 1471, 1478–79 (11th Cir. 1993) (citing *Stallworth* 558 F.2d at 263–66). In the case at bar, all four *Stallworth* factors favor granting the intervention motion of the Media Intervenors.

First, it is clear the Media Intervenors only recently learned of the *Van Etten* case. Their interest stems from the public interest and concern about the safety of Bridgestone/Firestone tires and Ford Explorers. Although it is hard to pinpoint the exact time it became clear that there was a defect or public health and safety concern with Bridgestone/Firestone tires, the Court finds it more than reasonable, for timeliness purposes, that the Media Intervenors moved to unseal the records within a month of when Bridgestone/Firestone recalled more than six million allegedly defective tires. Thus the Court finds that the first of the *Stallworth* factors favors the Media Intervenors' permissive intervention because they moved to intervene almost immediately upon learning of the *Van Etten* case and the related court records that cast light on the Bridgestone/Firestone tire tread separation defect.

■■■ Second, the Media Intervenor's will not cause any significant prejudice to the parties in the *Van Etten* case because the case has already settled. It is true that a major component of the settlement was the closure of discovery and information filed with the Court from public access and view. But the continued closure of court records in perpetuity is an unrealistic expectation on the part of Bridgestone/Firestone and the unsealing cannot be considered prejudicial since it is well-settled law

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) the United States Court of Appeals for the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

in this circuit that closed court records may be reopened even after settlement. The Eleventh Circuit held that "it is immaterial whether the sealing of the record [was] an integral part of a negotiated settlement between the parties.... Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Brown,* 960 F.2d at 1016. Therefore, the Court finds that the parties to the underlying case would not be prejudiced from the intervention of the Media Intervenors and, furthermore, that the Media Intervenors applied for intervention as soon as they reasonably could.

Third, the Media Intervenors would be unduly and irreparably prejudiced if the Court did not allow their intervention to unseal court records. In order to be granted access to the currently-closed public records in this case, the Media Intervenors must first be granted permission to intervene in this case. Because of recent revelations about the tire tread separation defect affecting many Bridgestone/Firestone tires, this case is of interest to the media as a safety matter about which they should be informing the public. Opening the court records will allow the media to report fully and accurately about any defects in the Bridgestone/Firestone tires, as alleged in the *Van Etten* case.

Fourth, other major factors militate toward finding that the motion to intervene is timely. In addition to the media, the public would be unduly and irreparably prejudiced if the Court were to deny the motion to intervene as untimely. "[I]t is the rights of the public, an absent third party, which are preserved by prohibiting closure of public [court] records, unless unusual circumstances exist." *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1570 (11th Cir.1985). The public has a strong and legitimate interest in accessing the documents filed in this case because those documents may cast light upon the Bridgestone/Firestone tire tread separation defect that profoundly impacts public health and safety.

The Court finds that all four *Stallworth* factors favor the conclusion that the Media Intervenors' consolidated motions to intervene are timely under Federal Rule of Civil Procedure 24(b). *See Stallworth,* 558 F.2d at 263–66. Thus, the consolidated motions of the Media Intervenors to intervene in the case at bar will be **GRANTED.**

### MOTIONS TO UNSEAL COURT RECORDS

Since the Court finds that the Media Intervenors should be permitted to intervene in the case at bar under Federal Rule of Civil Procedure 24(b), the Court now considers the merits of the Media Intervenors' consolidated motions—namely, whether the Court should unseal the remaining currently-closed public records.

█ " '[T]he starting point in such a discussion is the proposition that, absent some exceptional circumstances, trials are public proceedings.' " *Brown,* 960 F.2d at 1015 (quoting *Wilson,* 759 F.2d at 1569). There is a "strong common law presumption in favor of [public] access" to records filed with the Court in conjunction with any case, civil or criminal. *Brown,* 960 F.2d at 1015. The United States Supreme Court has noted that "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978) (citing cases). The Eleventh Circuit has been equally clear that "[t]here is no question that the press and the public jointly possess a common law right to inspect and copy judicial records and public documents." *In re Alexander Grant & Co. Litigation,* 820 F.2d 352, 355 (11th Cir. 1987) (citing *Nixon,* 435 U.S. at 597, 98 S.Ct. at 1311).

The "strong common law presumption in favor of [public] access" to court records comes from the firmly held view that "[o]nce a matter is brought before a court for resolution, it is no longer solely the

parties' case, but also the public's case." *Brown,* 960 F.2d at 1015–16. Furthermore, the "presumption in favor of openness" serves an important purpose for the legitimacy of both the judiciary and our nation's system of self government. *Wilson,* 759 F.2d at 1570. The Eleventh Circuit explained that keeping court records open preserves " 'the public's right to monitor the functioning of our courts.' " *Id.* (quoting *In re of Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308 (7th Cir.1984)) (citing *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 594–97, 100 S.Ct. 2814, 2836–38, 65 L.Ed.2d 973 (1980)). Thus, the "presumption in favor of openness" preserves "the rights of the public, an absent third party," to "appreciate fully the often significant events at issue in public litigation and the workings of the legal system." *Wilson,* 759 F.2d at 1570, 1571 (quoting *Newman v. Graddick,* 696 F.2d 796, 803 (11th Cir.1983)).

■ Because of this "strong common law presumption in favor of access," a heavy burden must be overcome by parties who wish to keep court records closed. *Brown,* 960 F.2d at 1015. In the Eleventh Circuit, "[a]bsent a showing of extraordinary circumstances . . ., the court file must remain accessible to the public." *Id.* at 1016. Specifically, "to deny access [to court records] in order to inhibit the disclosure of sensitive information," the party wishing to close those public records must show "that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to that interest." *Id.* (*quoting Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2619–20, 73 L.Ed.2d 248 (1982)); *accord Wilson,* 759 F.2d at 1571; *Newman,* 696 F.2d at 802.

Bridgestone/Firestone argues that pursuant to Federal Rule of Civil Procedure 26(c)(7), the currently-closed court records should remain sealed away from public access and view because they contain sensitive trade secrets and, if made available to a competitor, would harm Bridgestone/Firestone's competitive place in the tire industry. Furthermore, Bridgestone/Firestone argues that the Stipulated Protective Order is supported by good cause and is, therefore, legally valid. Thus, Bridgestone/Firestone claims that there is neither a common law nor First Amendment right of public access to view or scrutinize the documents shielded by a valid protective order issued properly under Federal Rule of Civil Procedure 26(c)(7) and supported by the required good cause.

To make these arguments, Bridgestone/Firestone relies primarily on two cases: *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), and *In re Alexander Grant & Co. Litigation,* 820 F.2d 352 (11th Cir.1987). In these cases, the United States Supreme Court and the Eleventh Circuit held that protective orders could shield unfiled pretrial discovery from public access and view. *See Seattle Times* 467 U.S. at 37, 104 S.Ct. at 2209–10, *In re Alexander Grant & Co. Litigation,* 820 F.2d at 355. However, Bridgestone/Firestone misreads the cases when it fails to appreciate that in both *Seattle Times* and *In re Alexander Grant & Co. Litigation,* only unfiled pretrial discovery materials were protected from public access and view, not discovered materials filed with the court for its judicial consideration.

■ Neither *Seattle Times* nor *In re Alexander Grant & Co. Litigation* held that documents filed with the court for its consideration could be sealed away from public access without being subject to heightened scrutiny. *In re Alexander Grant & Co. Litigation* makes it clear that although pretrial discovery can be shielded from public access and view, once discovered documents are filed with the Court for its consideration, those documents are part of the public record and subject to heightened scrutiny for closure. *See In re Alexander Grant & Co. Litigation,* 820 F.2d at 355. Specifically, the Eleventh Circuit explained: "[W]hile [the public] may *enjoy the right of access to 'pleadings,*

docket entries, orders, affidavits or deposition duly filed,' [the public's common-law right of access does not extend to information collected through discovery *which is not a matter of public record.*]" *Id.* (quoting *Wilson,* 759 F.2d at 1569) (citing *Seattle Times,* 467 U.S. at 33, 104 S.Ct. at 2207) (emphasis added). Thus, the *In re Alexander Grant & Co. Litigation* Court concluded that the only time a protective order was "not subject[ ] to heightened scrutiny" was when the "order [was] issued upon good cause and *limited to pretrial civil discovery.*" *In re Alexander Grant & Co. Litigation,* 820 F.2d at 355 (emphasis added). Because the Bridgestone/Firestone Stipulated Protective Order is not "limited to pretrial discovery" ... since it includes a provision that requires confidential documents to be filed under seal with the Court—that Stipulated Protective Order is subject to heightened scrutiny. *See* Stipulated Protective Order ¶¶ 5–6.

To be able to carry its burden, Bridgestone/Firestone must show that the closure of the records filed with this Court is necessitated by a compelling interest and that the closure is narrowly tailored to that compelling interest. *See Brown,* 960 F.2d at 1016 (*quoting Globe Newspaper Co.,* 457 U.S. at 606–07, 102 S.Ct. at 2619–20; *accord Wilson,* 759 F.2d at 1571; *Newman,* 696 F.2d at 802.) Furthermore, Bridgestone/Firestone "must make a 'particularized showing' of the need for continued secrecy' if the documents are to remain under seal." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 166 (3d Cir.1993) (citations omitted); *accord Parsons v. General Motors Corp.,* 85 F.R.D. 724, 726 (N.D.Ga.1980).

■ Bridgestone/Firestone argues that the continued closure of the court records serves a compelling interest because the records contain "confidential trade secret research and development information." Nevertheless, the Court finds Bridgestone/Firestone failed to carry its burden because it did not make any particularized

showings why the sealed documents constituted trade secrets and should remain closed away from public access and view.

Bridgestone/Firestone's sole evidence that the sealed documents contain trade secrets is a general, conclusory affidavit filed as its response to the Media Intervenors' motion to unseal the records. Specifically, the affidavit states that "[t]hese documents contain trade secret research and development information." Affidavit of John J. Goudie, Jr. ¶ 7. Throughout the Affidavit, the documents are only described in the most general and conclusory ways. *See id.* at ¶¶ 7, 10. The best description of the documents is the following:

(1) specifications; (2) standard practice documents; (3) adjustment data, and (4) testimony about the above in depositions. Those materials can be described more fully as follows:

—tire specifications are a detailed roadmap of the tire's design features, identifying the nature, composition, and dimensions of the components, the sequence and method of assembly, and the curing process;

—standard practice documents are a company wide or plant-specific rules applicable for Firestone's manufacturing process;

—adjustment data reflects Firestone's proprietary customer satisfaction rates based on returned tires and Firestone's internal procedures for the compilation and assessment of such data.

*Id.* at ¶ 7. But even this description can only best be described as general, rather than a particularized description of each and every document that is to remain sealed. Thus, the Court is left to simply trust Bridgestone/Firestone that the contents of the sealed documents are trade secrets. This the Court refuses to do since Bridgestone/Firestone has failed to meet its burden as particularized to each and every document.

Bridgestone/Firestone has also failed to prove that there is a compelling need for secrecy of the documents. Again, only general, conclusory statements from John Goudie's affidavit support the finding that closure away from public access and view is of the utmost necessity. For example, Bridgestone/Firestone relies on statements such as: "The competitive value of this information to Firestone, and the harm that would be caused by the release of this information to the public, warrant the entry of a protective order;" and "These documents would be of great interest to Firestone's competitor's." Affidavit of John Goudie, Jr. ¶¶ 7, 9. Even Bridgestone/Firestone's assessment of the harm that would result from disclosure is only the most general and conclusory.

> The information contained in the requested documents would assist a competitor in unfairly evaluating Firestone products. The information would allow a competitor access to Firestone's tire designs, manufacturing methods, and research and development process without the attendant time and expense represented by that process. Disclosure of these documents would also enable competitors to identify and evaluate Firestone's particular performance standards, and the methods by which compliance with those standards is achieved. Disclosure would also give competitors information about the plant equipment and technology used by Firestone to manufacture its products.

*Id.* at ¶ 10.

Furthermore, it is far from clear how valuable the Bridgestone/Firestone information could possibly be as it is already a few years old and mainly concerns the manufacturing processes and standards of a tire that was later found to be defective. A competitor would not want to replicate the designs or processes used to make a tire that has now been recalled in countries around the world. Thus, the Court finds that Bridgestone/Firestone failed to meet its burden in making particularized showings that there is a compelling interest in the closure of the court records.

Bridgestone/Firestone also failed to carry its burden to show that the closure of the court records is narrowly tailored. Bridgestone/Firestone never attempted to show in a particularized way why each and every sealed document should be closed away from public access and view. Instead, Bridgestone/Firestone relies on general, conclusory statements that the closed documents contain trade secrets that would harm Bridgestone/Firestone's competitive place in the tire market if revealed to the public at large. When Bridgestone/Firestone describes the contents of the closed documents, it does so using general characterizations such as "standard practice documents," "production rates and procedures," "adjustment data," and "specifications." Affidavit of John Goudie, Jr. These general categorizations do not help the Court understand why specific docket things should or should not continue to be sealed away from public access and view. As a result, because the burden rests squarely on Bridgestone/Firestone to show specifically why each document should be sealed, the Court finds that the current closure of the court records in the *Van Etten* case is not narrowly tailored as required by Eleventh Circuit precedent.

It is important to note that at the time the Bridgestone/Firestone Stipulated Protective Order was entered by United States Magistrate Judge James F. Graham, the Court made no findings why such protection was necessary. Second, as documents were filed under seal with the Court, the Court never made any particularized findings about why the documents should be closed to access by the public. Finally, in its response to the Media Intervenors' motions to unseal the court records, Bridgestone/Firestone was able to produce only conclusory and general statements about the documents "contain[ing] confidential trade secret research and development information." The Eleventh Circuit has held that "litigants do not have the right to agree to seal what were public records. The district court must keep in mind the rights of a third party—the pub-

lic. If the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system." *Wilson,* 759 F.2d at 1571 (quoting *Newman,* 696 F.2d at 803). As a result, the Court finds that Bridgestone/Firestone has not met its burden necessary to keep the court records sealed away from public view· and access. This conclusion is strengthened by the fact that there is a substantial amount of public interest in this case because of the current revelations about the tire tread separation defect. This public interest is legitimate because the tire tread separation defect concerns the health and safety of the public—interests of the highest order.[4]

The Court, therefore, finds that all remaining closed records filed with the Clerk of Court in the *Van Etten* case should be unsealed and made accessible to the public at large.

---

4. Even assuming that the sealed material could be classified as trade secrets, concerns of public health and safety trump any right to shield such material from public scrutiny.

## CONCLUSION

Having carefully considered the record and all arguments of the parties, the Court concludes that the Media Intervenors' consolidated Motions to Intervene are hereby **GRANTED.** The Court also concludes that the Media Intervenors' consolidated Motions to Unseal Court Records and for Access to the Record are hereby **GRANTED.** The Clerk of Court is instructed to open any remaining sealed docket entries in this case.

In view of the foregoing, the motions to intervene and unseal the record by the Attorney General of Florida are **DISMISSED as MOOT.**

See Fed.R.Civ.P. 26(c) (Advisory Committee Note to 1970 Amendment).