[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 28, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-15133

_____

D. C. Docket No. 98-00069-CV-2

CHICAGO TRIBUNE COMPANY,
THE WASHINGTON POST COMPANY,
CBS BROADCASTING, INC.,
LOS ANGELES TIME COMMUNICATIONS, LLC,
d.b.a. Los Angeles Times,

Intervenors-Plaintiffs-Appellees,

versus

BRIDGESTONE/FIRESTONE, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(August 28, 2001)**

Before BLACK, RONEY and COX, Circuit Judges.

PER CURIAM:

This is an appeal of the district court's order unsealing documents previously filed pursuant to a protective order entered by stipulation of the parties. *See* FED. R. CIV. P. 26(c)(7). We vacate and remand with instructions for the district court to determine whether "good cause" exists for maintaining the documents under seal.

## I.   BACKGROUND

Daniel Van Etten, an eighteen-year old football player from West Virginia University, died as a result of injuries sustained in a roll-over automobile accident. In April of 1998, his parents filed suit in the Southern District of Georgia, claiming that Bridgestone/Firestone, Inc.'s negligent design and manufacture of the tires on Daniel's Ford Explorer were the proximate cause of his death.[1] At the beginning of the litigation, in what has become commonplace in the federal courts, the parties stipulated to a protective order allowing each other to designate particular documents as confidential and subject to protection under Federal Rule of Civil Procedure 26(c)(7). *See* FED. R. CIV. P. 26(c)(7). This method replaces the need to litigate the claim to protection document by document, and postpones the necessary showing of "good cause" required for entry of a protective order until the confidential designation is challenged. *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir.

---

[1]    The Van Etten's suit also named the Ford Motor Company as a defendant. Neither Ford nor the Van Ettens are parties to this appeal.

1987) (discussing operation and efficacy of umbrella protective orders). As the district court noted, this allowed Bridgestone/Firestone, Inc. (Firestone) to temporarily enjoy the protection of Rule 26(c), making Firestone's documents presumptively confidential until challenged.[2]

Consistent with local rule, documents produced pursuant to discovery requests were not filed with the court. *See* S.D. GA. LR. 26.6. The protective order required the parties filing confidential material with the court in connection with a pleading or motion to place the documents in a sealed, marked envelope. The documents were to be used only for preparation and conduct of the action, and only counsel, their paralegals and technical consultants, as well as the court and its staff, were privy to the content of any confidential document. Of the nearly three hundred documents filed in the action, fifteen were placed under seal.

Following discovery, Firestone moved for summary judgment. The district court denied the motion, and shortly thereafter the parties settled. In accordance with the terms of the protective order, the confidential documents remained sealed.

---

[2]     *See* MANUAL FOR COMPLEX LITIGATION (Third) § 21.432 (1995) (noting that "[u]mbrella orders provide that all assertedly confidential material disclosed . . . is presumptively protected unless challenged. The orders are made without a particularized showing to support the claim for protection, but such a showing must be made whenever a claim under an order is challenged.").

3

In the months following settlement, media scrutiny of tire tread separation accidents intensified, and members of the media, now appellees[3] (collectively, "the Press"), sought leave to intervene[4] for the purpose of unsealing Firestone's documents. Firestone agreed to unseal some of the material, but objected to disclosure of nine documents and ten pages excerpted from legal briefs, claiming that these particular items contain trade secrets.[5] In support of this claim, Firestone appended a privilege

---

[3] Appellees are: the Chicago Tribune Company; the Washington Post Company; CBS Broadcasting, Inc.; and Los Angeles Times Communications, L.L.C.

[4] The Florida Attorney General also filed motions to intervene and to unseal the records, but the district court ultimately dismissed these motions as moot. *See Van Etten v. Bridgestone/Firestone, Inc.*, 117 F. Supp.2d 1375, 1384 (S.D. Ga. 2000). The Florida Attorney General is not a party to this appeal.

[5] The following is a list of the documents which remain sealed and are the subject of this appeal. Parenthetical references reflect district court docket numbers.
(1) Exhibits G, H, I, and J attached to the Van Ettens' motion to compel discovery, filed October 19, 1998 (42,50,53);
(2) Pages 4 and 5 of the Van Ettens' motion to compel discovery, filed May 3, 1999 (110), as well as pages 1 and 2 of the Van Ettens' motion to compel discovery, filed August 18, 1999 (224);
(3) The March 31, 1999 and April 1, 1999 depositions of David Eugene Kalamajka, Firestone's in-house expert and Kaizen (or "continuous improvements") supervisor, as well exhibits 1, 2, 4 and 5 to those depositions, submitted by the Van Ettens' in support of their response to Firestone's motion for summary judgment;
(4) Pages 2 and 5 of the Van Ettens' response to Firestone's motion for summary judgment on the issues of punitive damages and seat belt safety, filed on June 2, 1999 (149); and
(5) Page 14, pages 17-19, and attached exhibit number 14 of the Van Ettens' response to Firestone's motion for summary judgment on the issue of tire defect/negligence, filed on June 2, 1999 (156,156B).
(R30-319-2; R31-325).

4

log and the affidavit of John Goudie, the Senior Product Engineer in Firestone's Product Analysis Department.

The district court granted the Press's motion to intervene as well as its consolidated motion to unseal the remaining documents, determining that the Goudie affidavit was too general and conclusory to carry Firestone's burden of showing "that the closure of the records filed with this Court is necessitated by a compelling interest and that the closure is narrowly tailored to that compelling interest." (R.31-326-16). Accordingly, the district court ordered the documents unsealed, but, granting in part Firestone's motion to stay disclosure pending appeal, delayed the unsealing. We granted Firestone's emergency motion for a stay pending Firestone's appeal.

## II.  ISSUE ON APPEAL

The only issue in this appeal is whether the district court abused its discretion by granting the Press's motion to open Firestone's sealed documents.

## III.  STANDARD OF REVIEW

We review a district court's denial of a protective order for an abuse of discretion. *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989). A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact

5

that are clearly erroneous. *Mincey v. Head,* 206 F.3d 1106, 1137 n.69 (11th Cir. 2000).

## IV. DISCUSSION

Firestone's main contention is that the district court applied the wrong standard when it required Firestone to show that sealing the documents is necessitated by a compelling governmental interest and is narrowly tailored to that interest. Firestone argues for application of Rule 26's "good cause" standard, which balances the asserted right of access against the other party's interest in keeping the information confidential. *See In re Alexander Grant &* Co., 820 F.2d at 355-56.

The Press argues that two sources supply a right of access to Firestone's documents, both requiring application of the standard used by the district court. The Press first relies on the common-law right to inspect and copy judicial records, a right grounded in the democratic process, as "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Comm. v. Virginia,* 435 U.S. 829, 839, 98 S. Ct. 1535, 1541 (1978). The Press argues that in cases concerning health and safety or where there is a particularly strong public interest in court records, the common-law right of access is measured by the compelling interest standard. *See Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985); *Brown v. Adv. Eng'g, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992).

Additionally, the Press contends that there is a First Amendment right of access to court records and documents in civil cases. The Press cites *Newman v. Graddick*, 696 F.2d 796, 809 (11th Cir. 1983) for the proposition that the compelling interest standard applies to civil as well as criminal proceedings. Accordingly, the Press argues that whether the right of access is grounded in the common-law or the Constitution, the compelling interest standard applies.

Because the parties' arguments concern three different bases for disclosure of the sealed documents, it is necessary for us to limn the bounds of the common-law right of access, the constitutional right of access, and Federal Rule of Civil Procedure 26(c). We consider first the constitutional right of access.

A.    Constitutional Right of Access

The media and general public's First Amendment right of access to criminal trial proceedings has been firmly established since the Supreme Court's opinion in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S. Ct. 2814 (1980). *See Globe Newspaper Co. v. Superior Court of County of Norfolk*, 457 U.S. 596, 603, 102 S. Ct. 2613, 2618 (1982). For a court to exclude the press and public from a criminal proceeding, "it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id*. at 607, 102 S. Ct. at 2620.

7

The constitutional right of access has a more limited application in the civil context than it does in the criminal. *Newman*, 696 F.2d at 800-01. Nonetheless, this court has extended the scope of the constitutional right of access to include civil actions pertaining to the release or incarceration of prisoners and their confinement. *Id*. at 801. Materials merely gathered as a result of the civil discovery process, however, do not fall within the scope of the constitutional right of access's compelling interest standard.[6] *In re Alexander Grant &* Co., 820 F.2d at 355.

Public disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 2208. (1984). Where discovery materials are concerned, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure. *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989) (citations omitted). Accordingly, where a

---

[6] As the Supreme Court has noted, "[discovery materials and proceedings] are not public components of a civil trial. Such proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 2207-08. (1984) (citations omitted); *see also* Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 HARV. L. REV. 427, 487 (1991) (describing access to information produced by litigation as secondary benefit of, and necessarily subservient to, the judicial system's central concern of resolving disputes between litigants).

third party seeks access to material disclosed during discovery and covered by a protective order, the constitutional right of access, like Rule 26, requires a showing of good cause by the party seeking protection. *Id.*

The district court required Firestone to meet a compelling interest standard. To the extent this was predicated on a constitutional right of access, it was error. All of the documents were produced during the discovery phase of the litigation, and the protective order did not restrict the dissemination of information gained from other sources. *See Seattle Times*, 467 U.S. at 37, 104 S. Ct. at 2210. As we later discuss more fully, the adequacy of Firestone's good cause showing remains to be determined upon remand; because the Rule 26 standard is identical, the resolution of that issue will necessarily decide the Press's constitutional right of access claim.

B.    Common-Law Right of Access

The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process. *See Richmond Newspapers*, 448 U.S. at 564-74, 100 S. Ct. at 2821-26 (providing panegyric on the value of openness). Beyond establishing a general presumption that criminal and civil actions should be conducted publicly, the common-law right of access includes the right to inspect and copy public records and documents. *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 1312

9

(1978). The right to inspect and copy is not absolute, however, *id.*, and a judge's exercise of discretion in deciding whether to release judicial records should be informed by a "sensitive appreciation of the circumstances that led to . . . [the] production [of the particular document in question]." *Id.* at 598, 602-03, 98 S. Ct. at 1312, 1314-15. Not unlike the Rule 26 standard, the common-law right of access requires a balancing of competing interests. *See Newman*, 696 F.2d at 803.

Although there is some disagreement about where precisely the line should be drawn, when applying the common-law right of access federal courts traditionally distinguish between those items which may properly be considered public or judicial records and those that may not; the media and public presumptively have access to the former, but not to the latter.[7] An illustrative example is the treatment of discovery material, for which there is no common-law right of access, as these materials are neither public documents nor judicial records. *McCarthy*, 876 F.2d at 91.

In certain narrow circumstances, the common-law right of access demands heightened scrutiny of a court's decision to conceal records from the public and the

---

[7] *See, e.g., United States v. Amodeo*, 71 F.3d 1044, 1048-49 (2nd Cir. 1995) (describing continuum defining weight of presumption of access with regard to report filed with the court); *Leucadia v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) (refusing to grant access to material filed with discovery motions); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532-33 (1st Cir. 1993) (allowing access to documents and testimony introduced at trial); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678-680 (3d Cir. 1988) (granting access to evidence introduced at trial).

10

media. Where the trial court conceals the record of an entire case, making no distinction between those documents that are sensitive or privileged and those that are not, it must be shown that "the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to that interest." *Wilson*, 759 F.2d at 1571 (citation omitted); *see also Brown*, 960 F.2d at 1015-16. This heightened scrutiny is necessitated by the fact that entire civil cases otherwise open to the public are erased as if they never occurred. An example of this unusual circumstance is provided by *Wilson*, where the entire record, including "pleadings, docket entries, orders, affidavits . . . depositions . . . and transcripts or court reporter's notes of hearings or trial proceedings," were all sealed by the court following settlement without regard to the fact that the trial had been an open public proceeding and the trial transcript had been part of the public record. *Wilson*, 759 F.2d at 1569, 1571.

*Wilson* and the similar case of *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992) outline the narrow circumstances within which heightened scrutiny is the appropriate measure for the common-law right of access.[8] Because the facts of this case are easily distinguishable from *Wilson* and *Brown*, the district court's

---

[8] It has been suggested that the holdings of *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) and *Brown v. Adv. Eng'g, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992) are inconsistent with prior precedent. *See In re Four Search Warrants*, 945 F. Supp. 1563, 1566-67 n.4 (N.D. Ga. 1996) (discussing inconsistencies between and Wilson and *Newman v. Graddick*, 696 F.2d 796, 809 (11th Cir. 1983)). Because we determine that *Wilson* and *Brown* are inapplicable to this case, we do not reach this issue.

11

application of the compelling interest standard, to the extent that it was predicated on the heightened scrutiny line of common-law right of access cases, was error. The common-law right of access standard as it applies to particular documents requires the court to balance the competing interests of the parties. *See Newman*, 696 F.2d at 803. We turn now to an examination of the documents at issue, and the context of the proceeding in which they were submitted to the court.

The Firestone documents were produced during discovery, but all of them were also filed with the court, under seal, in connection with pre-trial motions. Some of the documents were submitted to support motions to compel discovery; others were submitted to support summary judgment motions.[9] Significantly, all the documents were submitted under seal, and all were submitted by the Van Ettens: Firestone did not submit the documents for judicial consideration.

The Press contends, and the district court agreed, that because the documents were filed with the court they are judicial records and therefore subject to the common-law right of access. Such an approach does not distinguish between material filed with discovery motions and material filed in connection with more substantive motions.[10] We think a more refined approach is called for, one that accounts both for

---

[9]     *See* supra note 5.

[10]     We note that absent a contrary court order or local rule, the default rule under the Federal Rules of Civil Procedure is that discovery materials must be filed with the district court.

12

the tradition favoring access, as well as the unique function discovery serves in modern proceedings. *See Leucadia v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164-65 (3d Cir. 1993). The better rule is that material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right, and we so hold.[11] This means that the Firestone documents filed in connection with motions to compel discovery are not subject to the common-law right of access.

Additionally, where a party has sought the protection of Rule 26, the fact that sealed material is subsequently submitted in connection with a substantive motion does not mean that the confidentiality imposed by Rule 26 is automatically forgone. Before disclosure is appropriate, a court must first conduct the common-law right of

---

*See* FED. R. CIV. P. 5(d). The prospect of all discovery material being presumptively subject to the right of access would likely lead to an increased resistance to discovery requests. *See United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986).

[11]     *Accord United States v. Amodeo*, 71 F.3d 1044, 1048-49 (2nd Cir. 1995) (measuring weight of presumption of access by "role of material at issue in the exercise of Article III judicial power"); *Rushford v. New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir. 1988) (noting that summary judgment adjudicates substantive rights and serves as a substitute for trial, and granting access to documents submitted with motion for summary judgment); *In re Cont'l Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (concluding that where corporation introduced copy of report of special litigation committee in derivative action in connection with motion to terminate claims, access should be granted)*; Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (holding that submission of materials in connection with motion for summary judgment precludes assertion of attorney-client privilege or work product immunity).

access balancing test. Because in this context the common-law right of access, like the constitutional right, requires the court to balance the respective interests of the parties, the Press's common-law right to the Firestone documents filed in connection with the motion for summary judgment may be resolved by the Rule 26 good cause balancing test. We turn next to a discussion of Rule 26.

C.    Federal Rule of Civil Procedure 26(c)

Rule 26(c) permits a court upon motion of a party to make a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." FED. R. CIV. P. 26(c)(7). The prerequisite is a showing of "good cause" made by the party seeking protection. *See id*. Federal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement. *Farnsworth v. Proctor & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citations omitted). This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential. *Id*.

Since the confidential designation was not challenged until the Press intervened, Firestone's Response to Intervenors' Motion to Unseal is the document that must establish good cause for continued protection under Rule 26. (R.29-311-*passim*). Although the district court discusses the adequacy of Firestone's Response in the

14

order unsealing Firestone's documents, we do not find a determination by the district court that the request for a protective order was not supported by good cause.[12] Because this conclusion is necessary to a resolution of the matter, we must remand to the district court for a determination of whether good cause exists for a protective order under Rule 26.

The first question that must be addressed on remand is whether Firestone's presumptively confidential documents do in fact contain trade secrets. Firestone argues that the sealed documents meet all of the commonly accepted criteria that define this category. These criteria require that Firestone must have consistently treated the information as closely guarded secrets, that the information represents substantial value to Firestone, that it would be valuable to Firestone's competitors, and that it derives its value by virtue of the effort of its creation and lack of

---

[12]     The district court's analysis focused instead on whether denial of access was narrowly tailored to a compelling governmental interest. *See Van Etten v. Bridgestone/Firestone, Inc.*, 117 F. Supp.2d 1375, 1381 (S.D. Ga. 2000). The only discussion of Rule 26(c) appears in the district court's alternate holding: "[e]ven assuming that the sealed material could be classified as trade secrets, concerns of public health and safety trump any right to shield such material from public scrutiny." *Id*. at 1384 n.4. Given the context within which this statement was made – the application of the compelling interest standard – we do not read this to be an application of the good cause standard.

dissemination.[13]   Firestone argues that the Goudie affidavit and privilege log established each of these criteria.

We recognize that in its analysis the district court regarded Firestone's Response to Intervenors' Motion to Unseal, as well as the accompanying affidavit, as too conclusory to meet Firestone's burden.  *See Van Etten v. Bridgestone/Firestone, Inc.*, 117 F. Supp.2d. 1375, 1382-83 (S.D. Ga. 2000). We also recognize that the district court's subsidiary findings of fact are entitled to deference.  *Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511-12 (1985).  But this particular determination was made in conjunction with the application of what we now determine was an erroneous legal standard.  Additionally, the court did not explain its conclusion.  Because findings of fact made by a district court need to be sufficiently detailed to permit meaningful appellate review, the district court should revisit the trade secret issue in the context of the good cause determination, examining the sealed

---

[13]   *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S. Ct. 2862, 2872 (1984) (noting that Restatement of Torts defines a trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it") (citing RESTATEMENT (FIRST) OF TORTS § 757 cmt. b);  UNIF. TRADE SECRETS ACT § 1(4), 14 U.L.A. 438 (1985) (defining "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). *See generally*, 26 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 5644 at 339-341 & nn.58-66 (2nd ed. 1994) (discussing issue of determining substantive definition of trade secret in context of rejected Federal Rule of Evidence 508).

documents in conjunction with its review of Firestone's response, the affidavit, and the privilege log. *See United States v. Wragge*, 893 F.2d 1296, 1299 (11th Cir. 1990) (noting that findings "must be sufficiently detailed to give an appellate court a clear understanding of the analytical process by which ultimate findings were reached and to assure us that the trial court took care in ascertaining the facts") (alterations in original) (citation omitted); *see also* supra note12 and accompanying text. Because trade secret status is the only basis Firestone provides for nondisclosure, should the district court conclude that Firestone's documents do not fall within this category, good cause does not support the protective order, and the documents may be unsealed.[14]

Should the district court determine that these documents do in fact contain trade secrets, the district court must balance Firestone's interest in keeping the information confidential against the Press's contention that disclosure serves the public's legitimate interest in health and safety. *See Farnsworth*, 758 F.2d at 1547 (citations

---

[14] The issue presented here is distinct from those situations where litigation interests support disclosure of trade secrets. *See, e.g., Centurion Indus., Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323, 326 (1981) (ordering disclosure of software trade secrets because relevant and necessary to patent infringement action); *Carter Prod., Inc. v. Eversharp, Inc.*, 360 F.2d 868, 872 (7th Cir. 1966) (ordering disclosure of third party's secret processes for verification of validity of patent grants); *Gohler v. Wood*, 162 F.R.D. 691, (D.C. Utah 1995) (granting motion to compel production of trade secrets where relevant and necessary to prosecution of suit). *See also, Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 598, 98 S. Ct. 1306, 1312 (1978) (noting that "courts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing").

omitted). In its order the district court stated that "[e]ven assuming that the sealed material could be classified as trade secrets, concerns of public health and safety trump any right to shield such material from public scrutiny." (R.31-326-21). The district court made no factual findings, however, that support the conclusion that the public's health and safety are sufficiently impacted by the information contained in these specific documents to trump Firestone's interest in keeping trade secret information confidential.[15] *See generally Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S. Ct. 2862 (1984) (discussing takings of proprietary trade secret information and attendant Fifth Amendment implications). Because whether good cause exists for a protective order is a factual matter to be decided by the nature and character of the

---

[15] We also note that the district court did not discuss Firestone's reliance on the terms of the stipulated protective order. As we noted in *United States v. Anderson*, 799 F.2d 1438 (11th Cir. 1986), agreements to treat certain materials voluntarily produced during discovery as confidential facilitate the discovery process: "[l]itigants should not be discouraged from putting their discovery agreements in writing, and district judges should not be discouraged from facilitating voluntary discovery." 799 F.2d at 1441. This is particularly the case where the party filing the presumptively confidential discovery material with the court is not the party claiming confidentiality, but that party's adversary, as is the case here. As the District of Columbia Court of Appeals noted in *Mokhiber v. Davis*, 537 A.2d 1100 (D.C. App. 1988), "[b]y submitting pleadings and motions to the court for decision, one enters the public arena of courtroom proceedings and exposes oneself . . . to the risk . . . of public scrutiny." 537 A.2d at 1111. The assumption is that one voluntarily foregoes confidentiality when one submits material for dispute resolution in a judicial forum. There is no voluntariness, of course, where one's adversary submits the presumptively confidential material. On remand, the district court should consider the fact that Firestone has exhibited behavior consistent with its claim of reliance in connection with the good cause balancing test.

18

information in question, this determination, supported by findings of fact, must be conducted upon remand.

## VI.    CONCLUSION

Because the order unsealing Firestone's records does not contain a Rule 26 good cause determination, we vacate the district court's order unsealing the documents and remand to the district court to consider this issue consistent with this opinion.

The good cause determination will also resolve the Press's constitutional right of access claim, because in the context of presumptively confidential discovery materials, the constitutional right of access standard is identical to the Rule 26 good cause standard. *McCarthy v. Barnett Bank of Polk County,* 876 F.2d 89, 91 (11th Cir. 1989).

The Press's common-law right of access does not extend to the sealed materials submitted in connection with motions to compel discovery; and, as to the documents submitted in connection with the motions for summary judgment, the Rule 26 good cause determination will resolve the Press's common-law right of access claim to these materials, as the standards are the same.

VACATED AND REMANDED WITH INSTRUCTIONS.

BLACK, Circuit Judge, specially concurring:

I concur fully in the Court's holding regarding the press's rights under the Constitution, the common law,[1] and Fed. R. Civ. P. 26(c). I write separately to express my concern about third parties—who have no cause of action before the court—using the discovery process as a means to unearth documents to which they otherwise would have no right to inspect and copy.

This Court has previously commented:

Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the *sole purpose* of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private.

If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe. Not only

---

[1] I concur in the Court's holding with respect to the common-law right because the Court does not address whether *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985), and *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013 (11th Cir. 1992), conflict with prior precedent. *See* Opinion at 10 n.8; *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 432-34 (5th Cir. Unit A 1981); *Newman v. Graddick*, 696 F.2d 796, 802-03 (11th Cir. 1983).

would voluntary discovery be chilled, but whatever discovery and court encouragement that would take place would be oral, which is undesirable to the extent that it creates misunderstanding and surprise for the litigants and the trial judge.

*United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (citation omitted) (emphasis added). Simply stated, the purpose of discovery is to resolve legal disputes between parties, not to provide newsworthy material.

To facilitate prompt discovery and the timely resolution of disputes, this Court has upheld the use of umbrella protective orders similar to the one used in this case. *See, e.g., McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). In these cases, we did not permit the media to challenge each and every document protected by the umbrella order. *See McCarthy*, 876 F.2d at 92; *Alexander Grant*, 820 F.2d at 356. Instead, the media was permitted only to challenge the umbrella order as being too broad, based on a variety of factors.[2] *See id.* (listing four factors). We have

---

[2] One factor is the "severity and the likelihood of the perceived harm." *Alexander Grant*, 820 F.2d at 356. A claim of trade secret privilege is an example of this factor. Where the parties seek an umbrella order to protect trade secrets, the district court may need to examine the documents to ascertain the likelihood of the perceived harm (that is, the likelihood that trade secrets would be disclosed without an umbrella order).

21

restricted the scope of the media's challenge because a document-by-document approach would not only burden the trial court, but, more importantly, it would interfere with the free flow of information during discovery.[3] *See id.* at 355-56. Such interference by parties who have no interest in the underlying litigation could seriously impair an Article III court from carrying out its core function—resolving cases and controversies. *See Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1017 (11th Cir. 1992) (Edmondson, J., dissenting).[4]

In light of the strong interest in having unimpeded discovery, third parties may be barred from accessing documents even when the documents are not protected by a privilege (like the trade-secret privilege), as long as the umbrella order itself meets the good cause requirement. *See McCarthy*, 876 F.2d at 91-92; *Alexander Grant*, 820 F.2d at 355-57. Here, however, the Court concludes that "trade secret status is the only basis Firestone provides for nondisclosure . . . ." Opinion at 17. Therefore, absent a showing that the challenged documents are trade secrets, "good cause does not support the [umbrella] order, and the documents may be unsealed." *Id.* (footnote omitted). In some future case, however, a party may argue that, although the

---

[3] In this case, the litigation has ceased, and therefore the press is not disrupting an active discovery proceeding. Nonetheless, the free flow of information will cease if parties resist entering umbrella orders because they fear such orders could be subject to document-by-document, post-judgment attacks.

[4] *See supra* note 1.

22

individual documents fail to qualify as privileged material, they nonetheless should be sealed because the umbrella order is necessary to facilitate the free flow of information and thus satisfies the good cause requirement. Since the Court has concluded that Firestone has not adequately preserved this argument, I concur in its holding.