**AMERICAN SCIENCE AND ENGINEERING, INC.,** Plaintiff,

v.

**AUTOCLEAR, LLC et al., Defendants.**

**Civil Action No. 2:07cv415.**

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 16, 2008.

Bernard Joseph Dimuro, Dimuro Ginsberg & Mook PC, John Minh Tran, Alexandria, VA, Erik Paul Belt, Kerry L. Timbers, Meredith Lee Ainbinder, Bromberg & Sunstein LLP, Boston, MA, Conrad Moss Shumadine, Willcox & Savage PC, Norfolk, VA, for Plaintiff.

Ernest Dorchester Buff, Harry Anagnostopoulos, Margaret Anne Lacroix, Theodore James Pierson, Jr., Ernest D. Buff & Associates LLC, Bedminster, NJ, Richard Johan Conrod, Jr., Stephen Edward Noona, Kaufman & Canoles PC, Norfolk, VA, for Defendants.

### MEMORANDUM OPINION AND ORDER

RAYMOND A. JACKSON, District Judge.

Before the Court are two Motions for Sanctions filed by American Science and Engineering, Inc. ("Plaintiff"). These matters have been fully briefed and are ripe for judicial determination.

### I. FACTUAL AND PROCEDURAL HISTORY

This matter stems from Plaintiff's claims against Autoclear, LLC, Control Screening, LLC, and Scan–Tech Security, LP,

("Defendants") alleging that Defendants have infringed certain patents, in violation of 35 U.S.C. § 271(a), (b), and (c), by manufacturing, using, offering to sell, and/or selling within the United States x-ray inspection systems and methods that are covered by one or more claims of Plaintiff's parents.

On September 13, 2007, Plaintiff filed a Complaint, sent Defendants a courtesy copy that same day, and formally served Defendants on October 3, 2007. On October 26, 2007, the Clerk filed an entry of default against Defendants, and Plaintiff moved for default judgement on November 9, 2007. On November 9, 2007, Defendants filed an Answer to the Complaint and a Motion to Set Aside Entry of Default. On May 1, 2008, the Court conducted a hearing and denied the Motion for Default Judgment. On October 23, 2008, Plaintiff filed a Motion for Sanctions concerning alleged misrepresentations made to the Court ("First Motion"). On November 19, 2008, Plaintiff filed an Emergency Motion for Sanctions concerning the issuance of an allegedly false and misleading press release ("Second Motion"). On December 4, 2008, the Court conducted a hearing on these two motions for sanctions.

## II. LEGAL STANDARD

■ Courts have inherent power to impose sanctions on a party for bad faith conduct that offends the legal process. *Chambers v. NASCO,* 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (explaining that inherent power is not displaced by statutory sanctions, because where "each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses"). If the conduct in question could be adequately sanctioned under the Rules, a court should ordinarily use the rule, but "if in the informed discretion of the court, neither the statute nor the Rules are up to

the task, the court may safely rely on its inherent power." *Id.* at 50, 111 S.Ct. 2123. Such sanctions may include assessing fees and costs, excluding evidence or defenses, or even the dismissal of a party's claims. *See, e.g., Carefirst of Md., Inc. v. First Care, P.C.,* 422 F.Supp.2d. 592, 597–600 (E.D.Va.2006); *Macias v. Target Stores Inc.,* 188 Fed.Appx. 210, 211–13 (4th Cir. 2006); *Price v. First Star Mortgage,* No. 2:03cv568, 2006 WL 2381921, at *3 (E.D.Va. Aug.15, 2006), *aff'd,* 296 Fed. Appx. 369 (4th Cir.2008).

■ Generally, the Court must find that the party acted in "bad faith" before the Court invokes its inherent powers. *See Chambers,* 501 U.S. at 49–50, 111 S.Ct. 2123. Bad faith may be found in the "conduct of the litigation." *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (quoting *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)).

## III. DISCUSSION

### A. First Motion for Sanctions: Defendants' Misrepresentations to the Court

■ Plaintiff has alleged that Defendants made material misrepresentations to the Court in order to avoid default, which Plaintiff has only recently discovered and were unknown to Plaintiff and the Court when Plaintiff argued its Motion for Default Judgment in May. Specifically, Plaintiff argues that while Defendants avoided default judgment by claiming that they did not have representation until after the default was entered, Defendants in fact had counsel working on the defense of this matter. (Pl's 1st Mot. Sanctions, 1.) Therefore, Plaintiff contends that Defendants' claims of inadvertence and mistake were made disingenuously, and that Defendants have misled the Court and multi-

plied the issues in the litigation. (Pl's 1st Mot. Sanctions, 1.)

Specifically, Plaintiff contends that on October 4, 2008, the day after Defendants were served with the Complaint, Defendants' CEO, Mr. Bradley Conway, instructed Autoclear's longtime patent prosecution counsel, Mr. Ernest Buff, to perform a validity search to find prior art that could be used to challenge the validity of one of Plaintiff's patents at issue. (Pl's Mem. Supp. 1st Mot. Sanctions, 3.) Additionally, Plaintiff alleges that Mr. Conway discussed the pending litigation and defense strategy on numerous occasions, both internally and with Mr. Buff, during the period between receiving the Complaint and the date the answer was due. (Pl's Mem. Supp. 1st Mot. Sanctions, 3.) Plaintiff also contends that there is no evidence to show that Defendants actually interviewed or contacted other counsel, despite Defendants' argument in their Motion to Set Aside Default that they required time to do so. (Pl's Rep. 1st Mot. Sanctions, 4–5.) Plaintiff learned of these matters during discovery, and has provided the Court with Defendants' privilege logs in support of its motion. Plaintiff argues that Defendants' delay was not motivated by a need to find counsel, but instead, to buy time to design around Plaintiff's patent. (Pl's Mem. Supp. 1st Mot. Sanctions, 6–7.)

Defendants counter that they have "repeatedly and sincerely admitted mistake in failing to respond to Plaintiff's complaint within the procedural time frame...." (Defs' Mem. Opp. 1st Mot. Sanctions, 1.) Defendants aver that they did not retain defense counsel for this litigation until after becoming aware of the entry of default; Mr. Buff (defense counsel) and Mr. Stephen Noona (local counsel) were retained on November 6, 2008 and November 9, 2008, respectively. (Defs' Mem. Opp. 1st Mot. Sanctions, 2–3.) Defendants argue that prior to the execution of the November 6 retainer agreement, Mr. Buff was acting only in his capacity as Defendants' prosecution counsel rather than as litigation defense counsel. (Defs' Mem. Opp. 1st Mot. Sanctions, 4.) Defendants further contend that after Mr. Buff's law firm discovered the entry of default, Defendants decided to retain Mr. Buff as defense counsel. (Defs' Mem. Opp. 1st Mot. Sanctions, 6.) Additionally, Defendants argue that the privilege log entries show only that "Defendants were strategizing and preparing for settlement discussions—which, if failed, would unfortunately result in litigation," and that Mr. Buff's involvement in these communications was only as patent prosecution counsel. (Defs' Mem. Opp. 1st Mot. Sanctions, 7–8.) Finally, Defendants argue that they had no ulterior motive for delaying the proceedings, because they became aware of distinguishing features of their designs in 2002 rather than during the delay in 2007. (Defs' Mem. Opp. 1st Mot. Sanctions, 8–9.)

█ According to Rule 55(c) of the Federal Rules of Civil Procedure, the Court may set aside the entry of default when good cause is shown. "[A] court should ordinarily set [an entry of default] aside unless the movant either fails to present a reasonable excuse for his neglect or fails to show he has a meritorious defense to the merits of the action." *Moran v. Mitchell*, 354 F.Supp. 86, 87 (E.D.Va. 1973). Generally the Court should set aside the default "where the moving party acts with reasonable promptness and alleges a meritorious defense." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). Other factors the Court may consider are "the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilato-

ry action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake,* 439 F.3d 198, 204–05 (4th Cir.2006). At issue here are Defendants' representations regarding their promptness and reasonable excuse for neglect.

In opposing default judgment, Defendants essentially argued: (1) that Mr. Conway and Autoclear were unsophisticated with respect to patent litigation and had never before hired out-of-state litigation counsel, (2) that Autoclear had difficulty obtaining defense counsel and subsequently preparing defenses but did so promptly after the default, and (3) that Defendants had some confusion "caused by Plaintiff stopping and starting matters" and mistake regarding the date the answer to the Complaint was due. (Defs' Mem. Supp. Mot. Set Aside Default, 2, 5; Conway Decl., ¶¶ 3–5.) At the default hearing, the Court determined that the first argument was false: Mr Conway is an attorney, Autoclear had been involved in patent litigation before, and Mr. Conway had retained litigation counsel. The Court admonished Mr. Conway for his "reckless disregard for the facts" and warned him that his future representations would be viewed "very keenly." (Default Hr'g Tr., 29).

In considering the motion for default judgment and the motion to set aside the entry of default, the Court relied on Defendants' second argument, that Defendants had acted reasonably and promptly in the three weeks between discovering the default and seeking to vacate it. (Mem. Op. & Order, Docket No. 55, 6). The Court relied on Defendants' representations that defense counsel was retained and defenses were prepared only *after* discovering the entry of default. (Default Hr'g Tr., 8–9) Accordingly, on May 1, 2008,[1] the Court vacated the entry of de-

fault and denied the motion for default judgment.

The Court has since learned that, during the period between the filing of the Complaint and the entry of default, Defendants *did* have an attorney who was working on this case. In fact, Mr. Conway himself testified that he authorized Mr. Buff to perform a validity search, which would be useful in potential settlement discussions and to defend the litigation in case "the proceeding would—would go further." (Conway Dep., 122–23). Additionally, there are multiple privilege log entries describing documents dated early to mid-October, with descriptions such as "notes taken of attorney's instructions in meeting with attorney after lawsuit," and "upon litigation, attorney requested scientist to review and comment on patents," and "notes taken from attorney in meeting ... include ... patent invalidity grounds." (Ex. F to Pl's Mem. Supp. 1st Mot. Sanctions). Defendants admit that these entries show that Defendants were "strategizing and preparing for settlement discussions—which, if failed, would unfortunately result in litigation." (Defs' Mem. Opp. 1st Mot. Sanctions, 7.)

Specifically, the Court has determined that: (1) Defendants had a long relationship with Mr. Buff, who was retained as patent prosecution counsel; (2) Mr. Buff was directed to explore defenses to the Complaint and consider settlement possibilities; and (3) Defendants, immediately following the entry of default, officially retained Mr. Buff as litigation counsel.

■ Defendants' formalistic definition of Mr. Buff's role is not persuasive. Under the law, attorney-client relationships arise out of substance and intent, even in the absence of a written contract. *See Nichol-*

---

1. The Court ruled from the bench on May 1, 2008 and issued a Memorandum Opinion and Order consistent with its rulings or May 23, 2008.

*son v. Shockey,* 192 Va. 270, 64 S.E.2d 813, 817–18 (1951); *see also* Restatement (Third) of The Law Governing Lawyers § 14 (2000) ("A relationship of client and lawyer arises when a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person and either the lawyer manifests to the person consent to do so or the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services.").

While Defendants contend that Mr. Buff was not "retained" as "litigation" counsel, the Court finds that Defendants had an attorney-client relationship with Mr. Buff, that Mr. Buff actually worked on this case prior to the entry of default, that Mr. Buff understood the significance of the Complaint and Defendants' duty to answer it, and that Mr. Buff was ultimately officially retained as litigation counsel approximately ten days after the entry of default. Accordingly, the Court finds that Defendants' argument is entirely devoid of substance. The Court believes that if Defendants had the time and sophistication to have an attorney research settlement possibilities and defenses to the Complaint, they certainly had time to answer it. Furthermore, the Court finds that Defendants' statements that they had trouble securing counsel were disingenuous and misleading.

Had the Court been aware of these facts before the Court vacated the entry of default and denied the motion for default judgement, the Court would not have been persuaded that Defendants had acted with diligence. Therefore, the Court would not have granted Defendants' motion to set aside the entry of default.

The Court concludes that Defendants clearly exercised bad faith in their dealings with the Court. Defendants deliberately withheld from the Court information related to their activities after receiving the Complaint, and such information was material to the Court's determination. Moreover, this information was withheld even after the Court reprimanded Mr. Conway, during the default judgment hearing, for making patently false assertions in his affidavit attached to the Motion to Set Aside Entry of Default. (Default Hr'g Tr., 29.) The Court also warned counsel that "this Court takes very seriously chicanery and deception, and that's what you need to address." (Default Hr'g Tr., 17.) Additionally, the Court instructed Mr. Buff that "[the Court] just want[s] to be sure that [it] is given accurate information." (Default Hr'g Tr., 21.) Despite this clear admonishment from the Court, Defendants did not fully disclose their prior relationship with Mr. Buff and the work performed on this case prior to the entry of default.

■ Given the gravity of Defendants' misconduct, the Court finds that sanctions are appropriate. The Court has considered vacating its earlier Memorandum Opinion and Order setting aside the entry of default, and therefore granting default judgment; however, the Court has determined that less severe sanctions will suffice. Drawing on its inherent power,[2] the Court orders Defendants to reimburse Plaintiff for attorneys fees and costs, to include, but not limited to, travel and lodging expenses, incurred in connection with: (1) Plaintiff's Motion for Default Judgment, Defendants' Motion to Set Aside Entry of Default, and the Default Hearing,

---

**2.** The Court relies on its inherent power rather than Rule 11, which reaches a narrower range of conduct, or 28 U.S.C. § 1927, which applies only to attorneys. *See Chambers,* 501 U.S. at 50, 111 S.Ct. 2123 (stating that "if in the informed discretion of the Court, neither the statute or the Rules are up to the task, the Court may safely rely on its inherent power").

and (2) Plaintiff's First Motion for Sanctions. Moreover, the Court exercises its inherent discretion to strike Defendants' First, Third, Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Separate Defenses asserted in the Amended/Supplemental Answer filed on August 11, 2008. These Defenses are stricken such that Defendants cannot directly or indirectly rely on them.

## B. Second Motion for Sanctions: Defendants' Misleading Press Release

■ In a separate motion, Plaintiff has requested that the Court remedy another act of misconduct by Defendants, namely, the issuance of a false and misleading press release regarding this litigation. Specifically, Plaintiff alleges that on November 16, 2008 (a Sunday evening), Defendants issued a press release which reported that "a Federal District Court has rejected American Science and Engineering, Inc.'s motions for summary relief in their action with Control Screening, LLC, and AutoClear, LLC, its affiliate. The District Court also denied AS & E's motion for injunctive and other relief … [T]he Federal Court did not sustain AS & E's objections to proceeding to full fact finding and a jury trial." (Ex. A to Pl's Mem. Supp.2d Mot. Sanctions.) The press release also states that "the U.S. Patent and Trademark Office (USPTO) has formally rejected all claims of AS & E's core … patent" and that those patent claims are now invalid. (Ex. A to Pl's Mem. Supp.2d Mot. Sanctions.) Plaintiff alleges that Defendants issued the press release through the news release distributer Business Wire, and that the press release has been widely disseminated and is available to Plaintiff's investors and customers and to any potential members of a jury pool in this case. (Pl's 2d Mot. Sanctions, 1–2; Ex. B to Pl's Mem. Supp.2d Mot. Sanctions.) Plaintiff further states that these misstatements have harmed AS & E's rep-

utation and may even negatively impact the company's stock price. (Pl's 2d Mot. Sanctions, 2.)

Defendants contend that they acted in good faith and expeditiously to correct the press release, and that Plaintiff failed to mitigate after Defendants clearly demonstrated their willingness to cooperate without the need for judicial intervention. (Defs' Opp. 2d Mot. Sanctions, 2.) Defendants aver that they issued a clarification statement on Business Wire within three days after the initial press release was issued, and that such statement was very similar to the redaction previously proposed by Plaintiff. (Defs' Opp. 2d Mot. Sanctions, 3–4; Ex. A to Defs' Opp. 2d Mot. Sanctions.) Defendants further argue that they would have willingly continued to work with Plaintiff to resolve this issue in a timely manner, but that Plaintiff instead filed this motion. (Defs' Opp. 2d Mot. Sanctions, 4–5.) Finally, in support of their clarification statement, Defendants argue that "a 'lay person' of the kind who reads press releases on Business Wire would likely be able to appreciate the difference between 'summary judgment' and 'summary relief.'" (Defs' Opp. 2d Mot. Sanctions, 7.)

The Court finds that the statement that "[the Court] has rejected [Plaintiff's] motions for summary relief" improperly suggests that the Court has denied Plaintiff's motion for summary judgment or otherwise ruled on the merits of the case. Plaintiff has not even filed a motion for summary judgment, and the Court has not yet ruled on the merits of the case, including on the infringement or the validity of the two patents at issue. Defendants have filed a motion for partial summary judgment, but the Court has not yet addressed that motion. The Court also finds the statements regarding the USPTO's actions are false. While the USPTO has agreed

to reexamine Plaintiff's claims, it has not "formally rejected all claims," "struck AS & E's core ... claims as unallowable," "suspended" Plaintiff's patent, or "advised" Defendants of those actions. Accordingly, the Court finds that Defendants' press release contains false, misleading, and damaging statements, and that Defendants have acted improperly.

At the hearing, Plaintiff argued that Defendants have neither denied that the press release contained false and misleading information, nor have they offered a single excuse for its issuance. Plaintiff further averred that as a publicly traded company, it was damaged by misleading information available on popular financial internet publications, and that some of their investors did read the press release and called the company with concerns. Furthermore, Plaintiff argued that such nationally available information has the potential to influence any potential jury pool in this case. Defendants countered that Plaintiff did not sufficiently mitigate the situation before seeking intervention from the Court. Defendants contended that they quickly offered to print a clarification, which Plaintiff rejected, and that before they could offer a new version, Plaintiff filed the motion for sanctions.

██ The Court finds that Plaintiff sent a clear retraction to Defendants, which Defendants refused to print. Instead, Defendants offered to print their own clarification, which Plaintiff deemed insufficient. As the parties were not able to quickly resolve this issue, and the press release containing damaging information continued to be available without retraction, the Court finds that Plaintiff did not act improperly by filing this motion with the Court. Moreover, the Court is far more

concerned with the actions of Defendants than those of Plaintiff.

At the hearing, Defendants explained that the press release was meant to convey that the Court vacated the entry of default, and that any misleading statements were unintentional and the result of Defendants' oversight. Defendants' attorney, Mr. Buff, stated that he had edited an earlier version of the press release. Mr. Buff speculated that Mr. Conway issued the press release, but could not state so with certainty.[3] The Court finds that both Mr. Buff and Mr. Conway are attorneys, that both are deemed capable of understanding the difference between default judgment and summary judgment, and that it is difficult for the Court to believe that the issuance of this press release was accidental. It is incredible that Defendants would issue a press release concerning the Court's denial of default judgment, which occurred in May 2008, approximately six months after the Court's ruling. Additionally, Defendants do not provide any excuse for the misleading statements about actions taken by the USPTO.

Accordingly, the Court concludes that Defendants issued the objectionable press release intentionally and in bad faith. Furthermore, even if the misstatements were unintentional, the Court finds that the issuance of a patently misleading press release on a nationally available, widely-read internet site is completely irresponsible.

██ The Supreme Court has held that civil litigants have a constitutional right to an impartial jury. *Thiel v. S. Pac. Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 90 L.Ed. 1181 (1946). Courts may disallow prejudicial extrajudicial statements by liti-

---

**3.** As Mr. Conway did not attend the December 4, 2008 hearing, and the pleadings did not address the matters of who issued the press release or for what purpose, the Court could not press further on those matters.

gants that risk tainting or biasing the jury pool. *United States v. Brown*, 218 F.3d 415 (5th Cir.2000). Additionally, false and misleading statements are not protected by the First Amendment. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ("False statements of fact harm both the subject of the falsehood *and* the readers of the statement"); *Cornwell v. Sachs*, 99 F.Supp.2d 695, 708 (E.D.Va.2000) ("An injunction that restrains only false or misleading commercial speech 'is consistent with the First Amendment' ") (quoting *In re Corey*, 892 F.2d 829, 839 (9th Cir.1989)). Accordingly, the Court has authority to enjoin false statements, particularly those that could potentially taint the impartiality of a jury. Additionally, the Court has inherent authority to impose sanctions, including attorneys' fees, under its inherent authority. *Chambers*, 501 U.S. at 55–58, 111 S.Ct. 2123.

The Court finds that publishing false information about the Court's rulings is egregious and vexatious misconduct justifying the imposition of sanctions. Accordingly, the Court grants the following relief requested by Plaintiff:

(1) Within 24 hours of his Order, Defendants shall cause the removal of the November 16th press release from Business Wire and any other website which Defendants know are displaying the November 16th press release;

(2) Defendants shall issue a corrected press release, in the form of Plaintiffs Exhibit D to its Memorandum in Support of its Motion for Sanctions, and shall disseminate it in the same manner:hat the November 16th press release was disseminated;[4]

(3) To the extent that Defendants are or become aware of instances of dissemination by any third party of the November 16th press release or any article or publication based on the press release, Defendants will take the necessary steps to provide the corrected release to he publisher within 24 hours of notice;

(4) Within 5 days of this Order, Defendants shall file a statement with the Court stating what steps it has taken to comply with this Order; and

(5) Within 14 days of this Order, Defendants shall pay to AS & E the sum of $10,000 as partial reimbursement for the attorneys' fees incurred by AS & E as a result of the issuance of the November 16th press release.

Finally, the Court orders Defendants to reimburse Plaintiff for all attorneys' fees and costs associated with bringing the Second Motion for Sanctions, including any such fees and costs not covered by the $10,000 requested by Plaintiff.

The Court further finds that these incidents are part of a deliberate pattern of deceit by Defendants throughout this litigation. The Court finds at least four instances of Defendants' deceptive behavior. First, Mr. Conway made numerous misrepresentations in his November 19, 2007 affidavit regarding his experience with patent litigation and hiring litigation counsel. Second, Defendants withheld information about their representation and activities prior to the entry of default, and the Court relied upon these misrepresentations in granting Defendants' Motion to Set Aside Entry of Default in May 2008. Third, in June 2008, Mr. Conway claimed status as inside counsel, despite stating in his November 19, 2007 affidavit that he

---

**4.** At the hearing, the Court ordered Defendants to issue Plaintiff's correction within forty-eight (48) hours of the hearing.

has "only practiced law full time for one year of [his] life," in 1981, that he has "never personally handled any litigation matter before any court in any capacity as an attorney," and that "any legal involvement that [he has] with [his] companies is minimal."[5] (Conway Decl., ¶ 2.) Because of Defendants' improper tactics, the Court granted Plaintiff's protective order[6]. Finally, in November 2008, Defendants filed a misleading, unnecessary, and damaging press release about the status of the litigation. All of these actions were intended to inappropriately influence this litigation. The second and fourth instances of misconduct are the subjects of the Court's sanctions in this Memorandum Opinion and Order.

## IV. CONCLUSION

For the reasons stated above Plaintiff's First Motion for Sanctions is **GRANTED.** Defendants are **ORDERED** to reimburse Plaintiff for attorneys fees and costs, to include, but not limited to, travel and lodging expenses, incurred in connection with (1) Plaintiff's Motion for Default Judgment, Defendants' Motion to Set Aside Entry of Default, and the Default Hearing, and (2) Plaintiff's First Motion for Sanctions. In addition, Defendants' First, Third, Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Separate Defenses asserted in the Amended/Supplemental Answer filed on August 11, 2008 are **STRICKEN.**

Plaintiff's Second Motion for Sanctions is also **GRANTED.** Defendants are **ORDERED** to take corrective action on the press release as indicated above and to pay Plaintiff's attorneys fees and costs associated with bringing the Second Motion for Sanctions.

Plaintiff is further **ORDERED** to file a statement of its fees and costs within thirty (30) days of the date of this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel.

**IT IS SO ORDERED.**

---

**5.** Mr. Buff also stated at the Default Hearing that "[Mr. Conway] was at all times acting and trying to act as a fact-finder, not acting as an attorney in that sense...." (Default Hr'g Tr., 20.)

**6.** On October 15, 2008, the Court granted Plaintiff's Protective Order, filed July 17, 2008. The Court found that Mr. Conway could not be treated as Defendants' inside counsel, that Plaintiff's counsel was appropriate acting as inside counsel, and that the levels of confidentiality proposed by Plaintiff were appropriate.