**IN RE: PETROFORTE BRASILEIRO DE PETROLEO LTDA., Debtors.**

**CASE NO. 14–15408–RAM**

United States Bankruptcy Court, S.D. Florida.

Signed April 20, 2015

504

Gregory S. Grossman, Esq., Miami, FL, for Debtors.

Avi R. Kaufman, Donald Kirk, Thomas Meeks, Alexandra Blye, Carlton Fields Jorden Burt, P.A., Miami, FL, for 1st BridgeHouse Asset Management, LLC and Geofinance, Ltd.

### ORDER GRANTING IN PART MO-TION FOR RELIEF FROM SEAL AND GAG ORDER

Robert A. Mark, Judge, United States Bankruptcy Court

The pending contested matter in this chapter 15 bankruptcy case poses a novel question: When, if ever, may a foreign representative in a chapter 15 case obtain an order authorizing discovery under seal, including an order prohibiting subpoenaed parties from disclosing the contents of the subpoenas to parties that are the targets of the investigation? The short answer is not in this case.

The court entered an ex-parte Order in this chapter 15 case granting this exceptional relief. That Order is now being challenged in the Motion for Relief From Seal Orders and Gag Provisions, for Limited Unsealing of Record, and to Stay (the "Motion for Relief") [DE # 22 under seal]. The Motion for Relief was filed by the law firm of Carlton Fields Jorden Burt, P.A. ("CFJB") on behalf of two of the subpoenaed parties. After thorough review of the facts and law, the Court is granting in part the Motion for Relief and vacating the provision of its prior Order preventing the subpoenaed parties from disclosing the contents of the subpoenas to other parties, including the targets of the investigation.

### Factual and Procedural Background

Dr. Afonso Henrique Alves Braga, as Trustee of Petroforte Brasileiro de Petroleo Ltda. (the "Trustee"), filed this chapter 15 bankruptcy case for the purpose of investigating "suspected misappropriated assets of Petroforte" in this district [DE # 2 ¶ 17]. On March 27, 2014 the Court entered its Order Granting Recognition of Foreign Main Proceeding Pursuant to § 1515 and 1517 of the Bankruptcy Code and Granting Related Relief [DE # 7] (the "Recognition Order"). As provided in § 1521(a)(4), the Recognition Order authorized the Trustee "to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs, rights and obligations of Petroforte and the Related Entities." The "Related Entities" are the entities and individuals to which the Brazilian Bankruptcy Court extended the effects of the bankruptcy. A list of the "Related Entities," which includes some of the discovery targets referred to later in this Order, is attached as Exhibit A to the Recognition Order (the "Related Entities").

The pending dispute arises from the Trustee's discovery strategy, specifically his effort to keep discovery requests sealed and a further effort to preclude subpoenaed parties from disclosing the contents of subpoenas to anyone other than their counsel. This strategy was pursued by the filing an ex-parte Amended Motion for Order Permitting Issuance of Subpoenas and Filings Under Seal and Related Relief [DE # 10 and DE # 13 under seal] (the "Motion to Seal and Restrict Disclosure").[1] The Motion to Seal and Restrict Disclosure and the supporting documents were filed under seal and have not been disclosed to any party including CFJB. Therefore, the substance of these documents will not be discussed in this Order. The Court can disclose that the Motion to Seal and Restrict Disclosure was supported by a lengthy Declaration executed by the Trustee which, in turn, was supported by documents including court orders and judgments.

After review of the Motion to Seal and Restrict Disclosure and the supporting exhibits, the Court entered its June 11, 2014 Order Granting Motion of Trustee for Order Permitting Issuance of Subpoenas and Filings Under Seal and Related Relief [# 16 under seal] (the "Seal and Gag Order"). The Seal and Gag Order authorized the Trustee to issue subpoenas on discovery targets and prohibited the subpoenaed parties (the "Subpoenaed Parties") from disclosing the existence or contents of the subpoenas to any other parties, except to their own attorney.

The sealing of the papers filed in this case and the gag provisions are part and parcel of the same relief because the Trustee's stated goal is to prevent the targets of the Trustee's investigation (the "Targets") from either dissipating assets or "bullying" Subpoenaed Parties into destroying or withholding documents or creating fraudulent documents. The subpoenas seek broad financial information from multiple third parties about entities which are now part of the Petroforte estate and third parties which have a connection to the Petroforte estate and potential assets of the estate.

---

1. The Trustee first filed the Motion to Seal and Restrict Disclosure on June 6, 2014 [DE # 10, under seal], which the Court granted [DE # 12 under seal].

  The Trustee then, almost immediately, amended the motion by changing the at-tached exhibits and the Court, again, granted the motion [DE # 13 under seal]. The original Motion to Seal and Restrict Disclosure and the amended motion are virtually identical except for the exhibits.

CFJB represents or has represented some of the Targets of the subpoenas. CFJB became aware of the Seal and Gag Order only because they were also retained to represent Geofinance Limited ("Geofinance") and 1st BridgeHouse Asset Management, LLC ("BridgeHouse"), two of the Subpoenaed Parties, and, as described earlier, the Seal and Gag Order permits Subpoenaed Parties to furnish copies of the subpoenas and the Seal and Gag Order to their counsel. CFJB's review of the Seal and Gag Order resulted in the filing of the Motion for Relief on August 28, 2014.

Upon review of the Motion for Relief, the Court entered its August 29, 2014 Order Setting Hearing on Motion for Relief from Seal Orders and Gag Provisions and Extending Time for Compliance with Subpoenas [DE # 23 under seal] (the "August 29th Order"). The August 29th Order excused Geofinance and BridgeHouse from responding to the subpoenas served on them until the Court ruled on the Motion for Relief. It also set briefing deadlines and scheduled a hearing on the Motion for Relief on October 16, 2014.

Prior to the October 16th hearing, CFJB sought further interim relief in its Motion to Extend Discovery Stay Pending Hearing on [Motion for Relief] [DE # 25 under seal]. Following a hearing on September 10, 2014, the Court entered its Order Granting in Part Motion to Extend Discovery Stay [DE # 31 under seal] ("the September 10th Order"). In that Order, the Court denied CFJB's request to stay discovery as to all of the Subpoenaed Parties pending a ruling on the Motion for Relief. However, the September 10th Order preserved the Target's rights to seek a protective order if the Motion for Relief was granted by prohibiting the Trustee and his attorneys from looking at any documents produced by the Subpoenaed Parties pending further Order.

The parties submitted papers as required by the August 29th Order, specifically, the Trustee's Response to the Motion for Relief [DE # 30 under seal] (the "Trustee's Response") and CFJB's Reply in support of the Motion for Relief [DE # 55 under seal]. Two arguments presented by CFJB can be disposed of without lengthy analysis. First, CFJB, on its own behalf, argues that the Seal and Gag Order must be vacated because it creates an insurmountable ethical dilemma between its duty to comply with the Seal and Gag Order and its duties as counsel to some of the Targets. Although extensively briefed by both sides, the Court announced at prior hearings that CFJB's ethical dilemma is not relevant to the propriety of the Gag and Seal Order. CFJB must comply with this Court's Orders notwithstanding any ethical conflict. Second, CFJB argues that this bankruptcy case and the discovery sought by the Trustee are manifestly contrary to the public policy of the United States pursuant to 11 U.S.C. § 1506. This argument is rejected. "The narrow public policy exception contained in § 1506 'is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance to the United States.'" *In re Vitro S.A.B. de C.V.,* 701 F.3d 1031, 1069 (5th Cir.2012) *quoting In re Ran,* 607 F.3d 1017, 1021 (5th Cir.2010). CFJB's primary arguments for modifying or vacating the Seal and Gag Order will be addressed later in this Order.

### *The Justification for the Seal and Gag Order*

The Motion to Seal and Restrict Disclosure and the Trustee's Response to the Motion for Relief describe the extensive history of the Petroforte Brazilian insol-

vency proceedings which began in 2003. Trustee's Response p. 3. Only a portion of the more than a decade old history of the case will be described in this Order. Petroforte, when it was in operation, was the third largest gasoline and ethanol distributor in Brazil. *Id.* Ex. C p. 10. The Petroforte estate, as it stands now, is comprised of approximately 278 companies and 71 individuals (the "Petroforte Estate"). *Id.* at 4.[2]

A significant transaction that ultimately expanded the Petroforte Estate to include multiple additional entities and individuals was a lease-back transaction of an ethanol plant (the "Plant") entered into in August of 2000 by Sobar S.A. Alcool e Derivados ("Sobar"), a company that was part of the Petroforte group, and Rural Leasing S.A., an entity that is part of a larger conglomerate of entities known as the Rural Group. Id. Ex. C pp. 10–11. The Rural Group includes Banco Rural, a mid-sized Brazilian retail bank, and Securinvest Holdings S.A. ("Securinvest"), the entity through which the Plant transaction took place. *Id.* The Rural Group is also affiliated with Katia Rabello, the alleged mastermind behind the dissipation of Petroforte Estate assets as is more fully described in the Trustee's filings in this case. Trustee's Response Ex. C pp. 10–16.

In the lease-back transaction, Rural Leasing lent money to Sobar. The loan was not secured by a mortgage. Instead, Sobar conveyed ownership of the Plant to Rural Leasing. Under the agreement, Sobar was entitled to reacquire ownership of the Plant when it repaid the loan. After Sobar failed to repay the loan, Securinvest, with the help of Rural Leasing, and through a subsidiary, acquired possession of the Plant. *Id.* Ex. C. pp. 14–15.

The Trustee was ultimately successful in unwinding the lease-back transaction. Moreover, because of the apparent wrongdoing of Securinvest, in 2007, the Petroforte Estate was extended over Securinvest by the Brazilian Bankruptcy Court. *Id.* p. 4. Securinvest appealed the order bringing it into the Petrofote Estate to the Tribunal de Justia São Paulo ("TJSP") and the TJSP affirmed the extension order. Securinvest then took a further appeal to the Superior Tribunal of Justice ("STJ"), which granted a stay preventing the Trustee from liquidating assets, but upheld the extension of the Petroforte Estate to Securinvest. On October 9, 2014, the Supreme Federal Court of Brazil ("STF"), the highest appellate court in Brazil, denied Securinvest's final appeal. Therefore, the extension order bringing Securinvest into the Petroforte Estate is now final [DE # 47 under seal].

After Securinvest filed its appeal to the STJ, the Trustee discovered that Securinvest had provided false and misleading information to the STJ. The Brazilian Bankruptcy Court then entered an order determining that Securinvest acted in bad faith and the stay initially granted by the STJ was lifted. *Id.* 6. Securinvest's cover up efforts involved, among other things, the creation of documents to obfuscate the identity of the ultimate beneficial owner of Securinvest. *Id.* Ex. E p. 4–5. The Trustee, prior to uncovering that Katia Rabello was indeed the ultimate beneficial owner of Securinvest, was misled at first to target two small Costa Rican business owners who knew nothing of Securinvest. *Id.* Ex. E pp. 5–6.

In 2010, the Petroforte Estate was also extended over Katia Rabello, triggering another plethora of unsuccessful appeals seeking to overturn the extension. Trus-

---

**2.** As noted earlier, a list of all of the Related Entities that are part of the Petroforte Estate is attached as Exhibit A to the Recognition Order [DE # 7].

tees Response pp. 9–10. In October of 2011, in an attempt to settle, Securinvest, Ms. Rabello, and other involved parties offered to return the Plant to the Petroforte Estate in exchange for an end to the extension of the insolvency proceedings to them and a release of all liability to the Petroforte Estate. *Id.* pp. 10–11. The Trustee opposed this settlement, but the Brazilian Bankruptcy Court affirmed it. The Trustee then appealed that order successfully to the TJSP which reversed the lower court's approval of the settlement. That decision was then affirmed on further appeal by a TJSP five judge panel. Securinvest, Ms. Rabello, and the other settling parties have further appealed that last order to both the STJ and the STF. Although those appeals are currently pending, the Petroforte Estate, as it stands now, encompasses Katia Rabello, Securinvest, and all of the other parties that were brought in based upon the wrongful Plant transaction. All of these parties are among the Related Entities in the Recognition Order. *Id.* 10–13.

In short, what the Trustee presented to the Court is a history of wrongdoing by parties that include the targets of the Trustee's discovery efforts in this chapter 15 case. This history of foul play by some the Targets is what formed the initial justification for the Seal and Gag Order. The question is whether this history of wrongdoing provides a sufficient basis to allow the Trustee to keep the Seal and Gag Order in place and to take discovery in secret.

### Summary of the Arguments

The Trustee argues that the Seal and Gag Order was appropriately entered because it is necessary in this case to "protect an important and substantial interest that would result in a particularized harm, *i.e.*, [the] prevention of the Trustee's investigative efforts from being completely frus-

trated." Trustee's Response p. 27. The Trustee further characterizes the subpoenas issued pursuant to the Seal and Gag Order as "confidential research" which were properly sealed under 11 U.S.C. § 107(b)(1).

The Trustee relies heavily on *In re Transbrasil S.A. Linhas Aéreas,* 2014 WL 1655990 (Bankr.S.D. Fla. April 24, 2014) *("Transbrasil")*, a decision issued in another chapter 15 case filed in this district. In that case, Judge Cristol ruled that a chapter 15 trustee was entitled to the same relief sought by the Trustee in this case. *Transbrasil* was appealed to the district court and recently Judge Moore entered an order affirming Judge Cristol's decision in *Marigrove v. Sauer (In re Transbrasil)*, Case No. 14–cv–22580 (S.D.Fla. March 30, 2015). *Transbrasil* is the case most on point.

CFJB argues that the Seal and Gag Order should be vacated because the Trustee lacks a compelling interest, his reliance on section 107 is "tortured" and "optimistically misconstrues" the statute, and the Seal and Gag Order improperly relies on both section 107 and the common law. CFJB further argues that even if the subpoenas were appropriately requested under seal, the gag provisions should be lifted as improper. CFJB argues that courts have upheld the issuance of gag orders only under extremely limited circumstances, none of which are present in this case.

### Relevant Statutes and Rules

In chapter 15, 11 U.S.C § 1521 (a) allows a foreign representative to seek discovery in the United States:

Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the

foreign representative, grant any appropriate relief, including— ... providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities . . . .

The relief granted to a foreign representative under section 1521 is in turn limited by 11 U.S.C. § 1522 (a) which states that the Court may grant relief under section 1521 "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."

The Trustee sought the subpoenas in question pursuant to Fed. R. Bankr. P.2004, which states that:

> The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

Further, Fed. R. Bankr. P. 9016 makes Fed. R. Civ. P. 45 applicable to all subpoenas issued in bankruptcy cases. Fed. R. Civ. P. 45(d)(3)(B) in turn allows the court to quash a subpoena: "To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena ..." Fed. R. Civ. P. 26(c) also allows for the issuance of a protective order for good cause.

This Court's Local Rule 2004–1(A), which governs the issuance of Rule 2004 subpoenas in this district, requires that a party issuing a 2004 subpoena provide notice to "the trustee, *the debtor*, the debtor's attorney and the party to be examined . . . ." (emphasis added). Local Rule 2004–1(C) also allows parties in interest to file motions for a protective order. The Trustee's position, which is thoroughly documented, is that Securinvest and Ms. Rabello "[have] been joined to the Petroforte Bankruptcy, [are] considered bankrupted in the Brazilian Bankruptcy Court proceeding, and that decision is final." Trustee's Response, p. 42. As "debtors" under Local Rule 2004–1(A), these Targets are entitled to notice of all subpoenas issued under Fed. R. Bankr. P.2004.

■ Finally, in all bankruptcy cases there is a presumption that all papers filed with the court are public record. 11 U.S.C. § 107(a). Section 107(b)(1) in turn limits this access: "On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—protect an entity with respect to a trade secret or confidential research, development, or commercial information." The Trustee relies on section 107(b)(1) and characterizes the subpoenas as part of his "confidential research" into Petroforte Estate assets. Fed. R. Bankr. P. 9018 contains an almost identical protection to the one in section 107 for confidential research.

When read as a whole, the statutory framework for subpoenas and Rule 2004 relies on an open record and notice to all so that parties affected by discovery can monitor whether the process proceeds in accordance with the law, and, can seek limitations on discovery when appropriate. The Seal and Gag Order deprives the Targets of these basic rights.

### *"Confidential Research" Under Section 107(b)*

■ The Trustee relies on section 107(b)(1) to seal the record in this case by categorizing his discovery efforts as "confidential research." For the reasons discussed at length later in this Order, the Court is lifting the gag restrictions, allowing the names of the Subpoenaed Parties to be disclosed, and allowing the contents

of the subpoenas to be disclosed. *As* such, the Motion for Relief, all of the memoranda filed in support of or in opposition to the Motion for Relief and all of the interim Orders will be unsealed. None of these papers constitute "confidential research" under section 107(b)(1). Similarly, neither the names of the Subpoenaed Parties nor the contents of the subpoenas constitute "confidential research" which should be sealed. The Court disagrees with *Transbrasil* to the extent it holds that subpoenas can be filed under seal pursuant to section 107(b)(1) under facts similar to this case.

The only remaining "seal" issue is whether to maintain the Trustee's Motion to Seal and Restrict under seal. In *Transbrasil,* the contents of certain subpoenas were disclosed in violation of a seal and gag order similar to the one entered in this case. Nevertheless, the court held that all of the motions and papers previously sealed would remain under seal as confidential research under section 107(b)(1). The district court found no abuse of discretion by the bankruptcy court and affirmed.

This Court also disagrees with the holding in *Transbrasil* to the extent it found cause to enter gag provisions authorizing secret discovery. Nevertheless, the Court finds sufficient cause to maintain the Motion to Seal and Restrict under seal. The Trustee revealed, according to him, confidential information and discovery strategies in an effort to justify his request for secret discovery. This arguably sensitive information should be kept under seal.

Neither the Targets nor the Subpoenaed Parties will be prejudiced by this result. All of the information they need in order to seek relief from the discovery is in the subpoenas themselves. As Judge Cristol noted in *Transbrasil,* "[n]ot knowing the extent of the Trustee's current work product or investigatory efforts does not prevent *Transbrasil* and the Discovery

Targets from responding to discovery or seeking relief from such discovery." 2014 WL 1655990 at *3. Therefore, pending further Order, the Motion to Seal and Restrict Disclosure [DE # 10 and # 13] shall remain under seal.

### The Standard to Issue Gag Orders and to Seal a Record

Gag Orders are rare. The interplay between the First Amendment and the issuance of gag orders has been thoroughly explored in criminal cases in which trial courts have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). In balancing what are often referred to as compelling government interests, which most often involve a defendant's right to a fair trial, courts have issued gag orders preventing the press from covering a case, preventing litigants from speaking about a case, or both. In criminal cases, gag orders are justified only if the government can establish that " 'the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest.' " *United States v. Brown,* 218 F.3d 415, 425 (5th Cir.2000) (quoting *Levine v. United States Dist. Court for Cent. Dist.,* 764 F.2d 590, 595 (9th Cir.1985)). Even when determined to be appropriate, "[t]he government must also establish that the order has been narrowly drawn and is the least restrictive means available." *Id.*

The Court has reviewed several cases where gag orders were issued to protect the fair trial rights of defendants in the criminal law context. *See e.g. Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1075, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (The " 'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending

cases and the State's interest in fair trials."); *United States v. Aldawsari,* 683 F.3d 660, 665 (5th Cir.2012) (gag orders restricting participants from communicating with the press "will be upheld only if the government can establish that 'the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest.' 'The government must also establish that the order has been narrowly drawn and is the least restrictive means available.' ") (citations omitted).

Gag orders in civil cases are less common. The Court found two cases in which courts have issued or discussed gag orders in the civil law context; *United States ex rel. Davis v. Prince,* 753 F.Supp.2d 561 (E.D.Va.2010) ("*Prince*") and *Am. Sci. & Eng'g, Inc. v. Autoclear, LLC,* 606 F.Supp.2d 617 (E.D.Va.2008) ("*Autoclear*"). Both of these cases, like the criminal cases discussed earlier, rely on the same criminal law jurisprudence and discuss the same conflict between the First Amendment and litigants' rights to a fair trial. In *Prince,* the court noted that courts "may restrict extrajudicial statements by parties and counsel only if those comments present a 'reasonable likelihood' of prejudicing a fair trial. 753 F.Supp.2d at 568 *citing In re Russell,* 726 F.2d 1007, 1010 (4th Cir.1984). The district court in *Prince* found that a magistrate judge appropriately denied the defendants request for a blanket gag order prohibiting the parties from making any extrajudicial statements regarding the litigation. *Id.*

The court in *Autoclear* issued a gag order requiring an internet publication to pull an article it had published on the ongoing case for fear that the article would taint the jury pool and because the article was, on its face, false. 606 F.Supp.2d at 625–26. Both cases ultimately stand for the same proposition as the criminal cases:

The fair trial rights of the litigants must be at risk before a court can enter a gag order. The gag provisions in this case do not seek to protect the fair trial rights of anyone, but rather seeks to prevent the Targets from knowing who has been subpoenaed to provide information about them and to prevent them from seeing the contents of the subpoenas.

The justification for sealing portions of the record in cases, whether civil or criminal, involves a less strict balancing test than the one applied to gag orders. The Supreme Court held in *Globe Newspaper Co. v. Superior Court of County of Norfolk,* 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) ("*Globe Newspaper*") that when a court "attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." The Eleventh Circuit has cited to *Globe Newspaper* for the same proposition. *See* e.g. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1310 (11th Cir.2001) ("*Chicago Tribune*") and *Newman v. Graddick,* 696 F.2d 796, 800 (11th Cir.1983).

The Court finds it appropriate, pursuant to the above described case law, to balance the Trustee's interest in preventing the dissipation of assets and the creation of fraudulent documents with the Targets' rights to seek protective orders and the Subpoenaed Parties' rights to communicate with other parties about the subpoenas. If the Court lifts the gag, the Trustee's purpose for sealing the record, at least going forward, is largely moot. The analysis of whether or not the gag provisions are appropriate is therefore dispositive to whether this Court should keep the majority of the record under seal.

### Application of the Balancing Test

The Trustee has good reason to be concerned about improper efforts to hide assets or documents given the history of this case as described in the Motion to Seal and Restrict Disclosure, subsequent pleadings, and Brazilian court opinions. The sham lease-back agreement, in tandem with the fraudulent attempts to hide Katia Rabello's identity as the ultimate beneficial owner of Securinvest, were enough for this Court to initially conclude that the risk of assets or documents being secreted provided sufficient cause to enter the Seal and Gag Order. However, after considering the arguments and a more thorough review of the applicable law, the Court finds it appropriate to lift the gag provision, unseal most of the record, and fashion further relief in order to protect the rights of the parties.

The Trustee argues that the gag and seal restrictions in this case are justified because the Court is only restraining access to discovery and "[r]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) ("*Seattle Times*"). The Trustee also cites to *Chicago Tribune* for the proposition that discovery material filed with the court in support of discovery motions is not subject to the common-law right of access. 263 F.3d at 1312.

■ In *Chicago Tribune,* after the parties had settled their dispute, the press sought access to documents filed under seal which were produced by the litigants during discovery. *Id.* at 1307–08. Firestone, the defendant, voluntarily provided some of the documents, but argued that certain papers which were filed with the court contained trade secrets. *Id.* The district court granted the relief sought by the press, unsealed the entire record, and Firestone appealed. *Id.* The Eleventh Circuit held that discovery material filed in support of discovery motions was not subject to the common-law right of access, but the Court declined to extend this protection to "discovery material filed in connection with pretrial motions that require judicial resolution." *Id.* at 1312. *Chicago Tribune,* in a broader sense, as described by Judge Black in her concurrence, stands for the proposition that "third parties may be barred from accessing documents even when the documents are not protected by a privilege." 263 F.3d at 1317.

At the October 16th hearing, CFJB acknowledged that courts have found no right of public access to documents produced in discovery. However, CFJB argued that the Trustee is not only seeking to restrain access to the fruits of discovery, but is also seeking to restrain access to the subpoenas through which the discovery is sought.

The Court agrees that this is an important distinction. The major difference between the facts in *Chicago Tribune* and the facts in this case is that the Trustee here is not seeking to limit access by the press or other third parties to documents obtained in discovery. Rather, the Trustee is seeking to bar the Targets, who are adverse parties and include debtors in the Petroforte Estate, from even participating in the discovery process.

■ Under normal circumstances, the Targets would have the right to seek a protective order from discovery of privileged or confidential matters pursuant to this Court's Local Rule 2004–(C) and Fed. R. Civ. P. 45(d)(3)(B). Without question the Targets would have standing to challenge the scope of the discovery sought in the subpoenas. In the Eleventh Circuit, standing exists if a party alleges a "per-

sonal right or privilege" with respect to a subpoena. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979); *see also, State of Florida v. Jones Chem., Inc.*, 1993 WL 388645, at *2 (M.D.Fla.1993). The Gag and Seal Order deprives the Targets of the opportunity to seek this protection. *See also In re Glitnir Banki HF*, 2011 WL 3652764, at *5 (Bankr.S.D.N.Y. Aug 19, 2011) ("*Glitnir*") (where subpoenas issued in a chapter 15 case seek what may be confidential information about a discovery target, that target has standing to seek a protective order under Rule 45).[3]

■ As referenced earlier, section 1522(a) provides that the Court should grant relief to a foreign trustee "only if the interest of the creditors and other interested entities, including the debtor, are sufficiently protected." This directive is often applied in protecting the rights of United States creditors. Here, where the primary purpose of the chapter 15 case is to conduct discovery, the Court finds that section 1522(a) requires this Court to balance the interests of the Trustee in obtaining this secret discovery against the due process rights of the Targets.

■ The case law requires a compelling interest to obtain the exceptional relief in the Seal and Gag Order. The Trustee argues that the primary Targets have been bad actors and that history may repeat itself. However, in the absence of evidence identifying a specific and likely risk, the argument is not compelling enough to justify maintaining the gag and seal. This is particularly true where the statutory presumption is for court records to be public, the rules require service of subpoenas on debtors and, perhaps most importantly, there is no persuasive precedent for

the broad relief provided in the Seal and Gag Order.

All trustees in bankruptcy bear the risk of dissipation of assets and the destruction or concealment of relevant documents by either debtors or third parties including parties that received potentially avoidable transfers. Indeed, in recent years, many bankruptcy cases have arisen from complex frauds or Ponzi schemes in which the trustee seeks to claw back funds or locate hidden or transferred assets in order to maximize distributions to defrauded parties. *See e.g. In re Rothstein Rosenfeldt Adler, PA*, Case No. 09–34791–RBR (Bankr.S.D.Fla.2009), *In re Fabrizio Dulcetti Neves*, Case No. 09–33043–LMI (Bankr.S.D.Fla.2009), and *In re Bernard L. Madoff Investment Securities LLC*, Case No. 08–01789 (Bankr.S.D.N.Y.2008). Those cases all involve some very bad actors, many of who have been successfully prosecuted for fraud and others who, although not formally prosecuted, participated in the fraud. These cases, one would think, would be the ideal spawning pool for orders authorizing secret discovery.

Yet there are no reported decisions in which a chapter 7 trustee in a Ponzi scheme case has been authorized to conduct secret discovery like the Trustee has been allowed to do in this case, even where targets were possible participants in the fraud. Moreover, there is no case law, except *Transbrasil*, supporting broad gag and seal protections in chapter 15 cases. Trustees in foreign insolvency proceedings should not be treated any differently than trustees in domestic bankruptcy cases. The absence of case law, coupled with the strong language limiting gags and the pre-

---

3. The court in *Glitnir* required that all future subpoenas be served "to the persons affected by the proposed discovery". 2011 WL 3652764, at *13. This decision, like the other

decisions cited in this opinion, highlight the importance of notice to the parties whose rights are affected by discovery.

sumption against gags even in criminal cases that involve a defendant's constitutional right to a fair trial, weighs heavily against the Trustee's argument to keep the Seal and Gag Order in place.

Even in *Transbrasil*, the Court lifted the gag and seal restrictions going forward after the gag provisions were violated by an inadvertent leak from a subpoena recipient. In turn the subpoenaed targets in that case were allowed to review the documents produced to the trustee and were allowed to assert privilege claims as to certain documents. This is the interest that the Court is concerned with protecting here, along with the Targets' general right of access to court papers, and the Subpoenaed Parties' First Amendment right to communicate about receipt of the subpoenas.

■ The few cases that do include seal or gag orders instruct that such relief must be narrowly tailored to address a particular risk. One prior case before this Court involved a disgruntled ex-wife who advised the chapter 7 trustee that the debtor was storing valuable undisclosed personal property in a warehouse unit. The ex-wife identified the unit by address and unit number. At the trustee's request, the Court entered an Order directing the warehouse owner to allow the trustee access to the storage unit. The Court also allowed the trustee's motion and the Order allowing access to be filed under seal without notice to the debtor. However, the trustee was allowed to withhold notice to the debtor and his counsel only until the trustee arrived at the warehouse unit. At that point, the trustee was ordered to provide notice to the debtor and his attorney so that they could be present when the contents of the unit were inventoried.

■ The Court provides this example in recognition that there are circumstances in which disclosure of discovery efforts may be kept secret from a target, including the debtor in a case, but only when there is a clear and immediate risk that assets will be dissipated. The example further indicates that discovery may be kept secret only for the limited time necessary to address a specific risk.

The Trustee's Response cites two cases to support his argument that sealing orders are justified by concerns about efforts to conceal assets or the dissipation of assets. Trustee's Response p. 38. These same two cases are cited in Judge Cristol's *Transbrasil* decision. In fact, these two cases only support very limited relief.

The first case cited is *Commodity Futures Trading Comm'n v. Bolze*, 2009 WL 605248 (E.D.Tenn. March 3, 2009)("*Bolze*"). In *Bolze*, the district court granted the plaintiff's request to seal the court file to prevent concealment and dissipation of assets and the destruction of documents. 2009 WL 605248 at *1. However, the file was only sealed until the earlier of 72 hours or service of the complaint on the defendant. *Id.* The short duration was important to the court's decision: "[T]he Court emphasizes the limited temporal duration of the request by Plaintiff, an independent federal regulatory agency." *Id.*

The second case is *Fed. Trade Comm'n v. USA Beverages*, Inc., 2005 WL 3676636 (S.D.Fla. Nov. 4, 2005) ("*USA Beverages*"). In *USA Beverages*, the district court temporarily sealed the court file based on a risk that assets could be concealed or dissipated. 2005 WL 3676636 at *2. The risk was supported by evidence that the defendant had recently transferred funds from its bank account in the United States to Costa Rica. *Id.* at *1. More significantly, as in *Bolze*, the seal order was of very limited duration, lasting only two days after the court ruled on the

plaintiff's motion for a temporary restraining order ("TRO"). *Id.* Further differentiating this case, the plaintiff in *USA Beverages* had to comply with Fed. R. Civ. P. 65(b) to obtain a TRO, which requires an affidavit or verified complaint clearly showing that immediate and irreparable injury, loss, or damage will result if the TRO is not entered. 2005 WL 3676636, at *2.

As is evident, the limited relief entered by this Court in the storage unit case and the limited, short-term relief entered by the district courts in *Bolze* and *USA Beverages* are all a far cry from the broad relief in the Seal and Gag Order at issue in this case. The Seal and Gag Order keeps secret the names of, and documents requested from, the Subpoenaed Parties, based on nonspecific, speculative assertions that documents will be dissipated or assets fraudulently conveyed if the Targets have notice of the subpoenas. Under the Seal and Gag Order, not even the Court knows the scope of the Trustee's discovery efforts. Moreover the seal and gag provisions will last for months until the Trustee concludes his secret discovery.

The Seal and Gag Order is also not narrowly tailored. The seal and gag provisions apply to all subpoenas issued by the Trustee, which are all issued at his sole discretion. Further, the Seal and Gag Order is in effect for at least 180 days and allows the Trustee to request additional time if needed. This alleged restriction on duration is meaningless because the Trustee contemplates completing all discovery before the seal and gag provisions are lifted.

Further, the Trustee cannot identify a particularized harm as required by the case law. The Trustee's concern of preventing his "investigative efforts from being completely frustrated" is a general concern that all litigants in any dispute

have. The Trustee states that without the Seal and Gag Order "the purpose of such discovery likely will be thwarted as subpoenaed targets *may* be pressured, documents *may* be destroyed, and assets *may* be diverted." Trustee's Response p. 27 (emphasis added). These general and speculative statements do not rise to the level of a particularized harm.

Finally, the alleged risks identified by the Trustee must be viewed in light of what has already been disclosed. In his Verified Petition for Recognition of Foreign Main Proceeding pursuant to §§ 1515 and 1517 [DE # 2], the Trustee identifies some of the Targets by name, discusses past attempts in this district to issue subpoenas, and even identifies banks with alleged connections to Petroforte Estate assets. The Seal and Gag Order prevents the Targets from learning the identities of the Subpoenaed Parties and the contents of the subpoenas. However, the Targets certainly know that the Trustee is looking in this district for information, and nothing can prevent the Targets, if they are indeed willing to commit further bad acts as proffered by the Trustee, from impeding the Trustee's investigation.

In sum, the Trustee's interest in not being impeded by potential misconduct and his interest in marshaling the assets of the Petroforte Estate, while important, are not compelling enough and specific enough to justify maintaining the broad relief in the Seal and Gag Order.

### Conclusion

When a foreign representative seeks the assistance of a United States court and seeks to utilize our discovery processes, the foreign representative must play by our "rules," which include the statutes, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and this Court's Local Rules. Our

"rules" simply do not allow the breadth of secret discovery the Trustee is attempting to pursue in this case. Therefore it is—

**ORDERED** as follows:

1. The Motion for Relief is granted in part as provided in this Order.

2. The Seal and Gag Order is modified as follows:

(a) The Motion to Seal and Restrict Disclosure [DE #10 and DE #13 under seal] will remain under seal pending further Order.

(b) All other documents presently under seal shall be unsealed and made part of the public record on the docket in this case.

(c) The disclosure restrictions in the Seal and Gag Order are lifted. CFJB may disclose the existence and contents of the Subpoenas to the Targets.

(d) The Trustee shall serve a copy of all the subpoenas issued to the Subpoenaed Parties on the Targets that are also Related Entities in the Petroforte Estate. Service shall be made directly to the Targets or on counsel for the Targets who have filed appearances in this case.

3. The modifications to the Seal and Gag Order in this Order will become effective when this Order becomes a final Order ("Final Order"). As used in this paragraph, Final Order means that either (a) the Trustee has not filed a timely motion for reconsideration or a motion for reconsideration was filed but an Order has been entered denying that motion; *and,* (b) if the Trustee has filed a timely Notice of Appeal, neither this Court nor the district court has entered a stay pending appeal after such a request has made, or any stay entered has expired. Upon a motion filed by the Trustee, this Court will likely grant a short stay to allow the Trustee time to seek a stay pending appeal in the district court.

4. Until this Order becomes a Final Order, the Seal and Gag Order remains in full force and effect. This means that CFJB may not disclose to any other party, including the Targets that are CFJB clients, either the existence or contents of the Geofinance and BridgeHouse subpoenas. This also means that until this Order is a Final Order, the Trustee and his attorneys remain bound by the September 10th Order prohibiting them from viewing any documents already produced by the Subpoenaed Parties (the "Produced Documents").

5. This Order shall be filed under seal and all other filings presently under seal shall remain under seal until this Order is a Final Order. As provided in paragraph 2(b) above, if and when this Order becomes a Final Order all documents will be unsealed and made a part of the public record except for the Motion to Seal and Restrict Disclosure [DE #10 and DE# 13].

6. If and when this Order becomes a Final Order, the Produced Documents shall be made available for review by CFJB or counsel for any of the Targets that file an appearance in this case ("Targets' Counsel"). Targets' Counsel shall have thirty (30) days from the date the documents are made available for review to file motions for a protective order ("Protective Order Motions") seeking to preclude the Trustee from reviewing any of the Produced Documents on grounds of privilege or otherwise.

7. After the thirty (30) day deadline for filing Protective Order Motions expires, all documents not the subject of a timely filed

Protective Order Motion may be viewed by the Trustee and his attorneys. All of the documents subject of a Protective Order Motion shall remain in the possession of the Trustee's counsel but maintained in sealed envelopes, folders, or boxes pending a ruling on the Protective Order Motions.

**ORDERED**