[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13476

_____

COREY J. ZINMAN,

Plaintiff-Appellant,

*versus*

NOVA SOUTHEASTERN UNIVERSITY, INC.,
SOUTH FLORIDA STADIUM LLC,
BROWARD COUNTY,
a Florida County and Political Subdivision
of the State of Florida,
BERTHA HENRY,
individually,
MIAMI-DADE COUNTY,
a Florida County and Political Subdivision
of the State of Florida, et al.,

2                    Opinion of the Court                    21-13476

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cv-60723-RAR

_____

Before WILLIAM PRYOR, Chief Judge, MARCUS, Circuit Judge, and
MIZELLE,[*] District Judge.

MARCUS, Circuit Judge:

Corey Zinman attended law school at Nova Southeastern
University ("NSU") during the COVID-19 pandemic. To mitigate
the spread of the virus, NSU required its students to wear masks
while on campus. But Zinman didn't want to, claiming it violated
his sincerely held religious beliefs as a Jewish person. He requested
a religious exemption from the school's mask mandate to partici-
pate in an in-person clinic at the Palm Beach County Public De-
fender's office unmasked, but the school and the Public Defender's
Office denied his request. He then sought a religious exemption to
attend the law school's in-person graduation ceremony at Hard

_____

[*] Honorable Kathryn Kimball Mizelle, United States District Judge for the
Middle District of Florida, sitting by designation.

Rock Stadium (managed by Defendant South Florida Stadium ("SFS")) unmasked, but that request was denied, too.

This suit followed. Zinman's Second Amended Complaint alleged six different counts, ranging from discrimination under the Civil Rights Act of 1964, to violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), to various constitutional violations under 28 U.S.C. § 1983, against seven defendants. Ultimately, the district court granted two motions to dismiss, concluding that, with the mask mandates behind us, Zinman's claims for injunctive relief had become moot, and that Zinman failed to state a claim under any of his theories. Along the way, the district court also denied a motion for sanctions filed by Zinman premised on allegedly false and misleading statements made by counsel for two of the defendants, and it granted a discovery motion filed by SFS in response to an overly burdensome request for production served by Zinman.

None of Zinman's claims are viable. His application for injunctive relief is moot as to all of the defendants. Zinman's damages claims fare no better. His Title II claim fails because damages are not available under Title II of the Civil Rights Act. His Title VI claim fails because the Second Amended Complaint does not contain any factual allegations -- as it must -- from which we could infer that any of the masking decisions NSU made were animated by discriminatory intent. And his § 1983 claims fail because Zinman has not plausibly alleged that any of his constitutional rights were violated. Accordingly, we affirm.

## I.

The essential facts, drawn entirely from Zinman's Second Amended Complaint, are these. Zinman started law school at NSU in August 2018 and graduated in May 2021. At the broadest level of generality, this lawsuit arises out of Zinman's efforts to do two things without wearing a mask: (1) participate in an in-person Criminal Justice Field Placement Clinic that required participants to be masked; and (2) attend his in-person graduation ceremony at Hard Rock Stadium that required attendees to be masked. Zinman also raised more general objections to NSU's policy requiring individuals to be masked while on campus.

In response to the pandemic, NSU adopted a policy that, based on recommendations from the CDC and local ordinances, required all NSU individuals -- students, faculty, staff, visitors, and clinic patients -- to wear a face covering while on campus or during the use of any NSU facility. But, according to Zinman, wearing a mask violates his sincerely held religious beliefs because "Judaism unequivocally prohibits any and all forms of idolatry" and forcing compliance "with the affirmative commands of so-called 'experts' who claim to be able to save lives if people simply obey their commands without question -- otherwise known as false idols" violates this tenet of his faith. Second Am. Compl. ¶¶ 46, 57.

Based on his religious objection, on December 25, 2020, Zinman sought an accommodation to the mask policy so that he could participate in a Criminal Justice Field Placement Clinic without being required to mask up; NSU denied his request. He renewed his

21-13476                Opinion of the Court                5

request again on December 30, but it too was denied. He then tried reaching out to the Palm Beach County Public Defender's Office -- a participant in the clinic -- to request an accommodation, but his request was, again, denied. Rather than wear a mask, Zinman withdrew from the clinic.

On January 22, 2021, NSU announced that it was "planning to hold commencement ceremonies with masks, physical distancing, and completely outside with sanitized seating and facilities" and that "[t]o enable [it] to maintain appropriate physical distancing . . . [NSU] [was] making arrangements to hold [its] series of graduating ceremonies where the Miami Dolphins play -- at the Hard Rock Stadium -- this May." *Id.* ¶ 32.

Zinman sent a letter to the dean of the NSU law school asking NSU to amend its campus guidelines in order to accommodate his religious objection. An assistant dean for the school told him that NSU had the right to require students, staff, faculty, and visitors to wear masks while on university property.

Upon learning that his request would not be honored, Zinman sued Nova Southeastern University and South Florida Stadium in the United States District Court for the Southern District of Florida. His Second Amended Complaint lodged six counts against seven defendants in all (NSU, SFS, Broward County, Bertha Henry, Miami-Dade County, Palm Beach County, and Casey Haughwout). Two of the defendants (Palm Beach County and Casey Haughwout) were never served and are therefore not part of the lawsuit.

During the litigation, Zinman moved for sanctions, objecting to certain statements made by counsel for NSU and SFS in their pleadings opposing Zinman's motion for a preliminary injunction and in support of an application to dismiss the First Amended Complaint. Defendant SFS, in turn, sought a protective order because Zinman's requests for production were too broad. The requests included "any and all photographs, videotapes or surveillance footage from all commencement ceremonies hosted by Hard Rock Stadium in May of 2021," and "any photographs, videotapes or surveillance footage from the Floyd Mayweather/Logan Paul fight hosted by Hard Rock Stadium on Sunday, June 6, 2021." Pl.'s First Request for Produc. of Docs., at 7–8.

A magistrate judge, to whom the case had been referred, granted SFS's motion for a protective order, finding that the video footage requested went far beyond Zinman's discovery needs. Mot. Hr'g Tr. at 16:6–15. The magistrate judge also issued a Report and Recommendation recommending that the district court deny Zinman's motion for sanctions and grant the defendants' motions to dismiss the entire Second Amended Complaint. The district court agreed, adopted the Report and Recommendation, and dismissed the case.

This timely appeal followed.

## II.

"We review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, accepting the allegations in the complaint as true

and construing them in the light most favorable to the plaintiff." *Chabad Chayil, Inc. v. Sch. Bd.*, 48 F.4th 1222, 1229 (11th Cir. 2022). We review a district court's denial of a motion for Rule 11 sanctions for an abuse of discretion. *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). The same standard applies to the review of a trial court's ruling on a motion for a protective order. *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001) (per curiam). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Id.*

In each of the six counts in the Second Amended Complaint, Zinman sought both injunctive and declaratory relief and damages. He is not entitled to relief on any of his claims.

## A. Injunctive Relief

Zinman seeks injunctive and declaratory relief for all of his claims arising under the Civil Rights Act of 1964 and § 1983. He does not challenge the district court's dismissal of his RLUIPA claim (Count VI), so we do not address it. *See United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc) ("Typically, issues not raised in the initial brief on appeal are deemed abandoned.").

### i. NSU and SFS

Zinman's claims for injunctive and declaratory relief against NSU are moot because he is no longer a student there, and he does

not allege that he intends to return to NSU as a non-student. "Federal courts are courts of limited jurisdiction." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (citation omitted). Article III of the Constitution limits our jurisdiction to "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. "[T]hat means the plaintiff must have standing (a personal stake in the matter), and the case must not be moot (it must present a live, ongoing controversy that the court may redress)." *Keister v. Bell*, 29 F.4th 1239, 1249 (11th Cir. 2022) (citations omitted).

A case becomes moot "if an event occurs that ends 'any actual controversy about the plaintiff['s] particular legal rights.'" *Id.* at 1250 (alteration in original) (citation omitted). There is one relevant exception: a case may not become moot based on the "[m]ere voluntary cessation of allegedly illegal conduct." *Troiano v. Supervisor of Elections,* 382 F.3d 1276, 1282 (11th Cir. 2004) (alteration in original) (citation omitted). That said, the "voluntary cessation" doctrine does not apply "when there is no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after the termination of the suit." *Id.* at 1283. "When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Id.* (collecting cases).

Zinman's case has become moot because he graduated from the law school in 2021; thus, he is not threatened with any harm from future masking decisions the law school may make. *See Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)

(holding that students' claims that school's graduation ceremony policies violated the First Amendment were moot because the students had graduated). And because there is no reasonable expectation -- indeed, there is virtually no expectation -- that Zinman will be forced by NSU to wear a mask after the termination of this suit, the voluntary cessation doctrine does not help him.

Zinman's claims for injunctive relief against SFS fail for the same reason. He only sought injunctive relief to enjoin SFS from requiring him to wear a mask at his law school graduation, and his graduation has long since passed. Moreover, Zinman never alleges in the Second Amended Complaint that he intends to return to SFS for a reason other than his graduation.

### ii. Broward County, Broward County Administrator Bertha Henry, and Miami-Dade County

Zinman's claims for injunctive and declaratory relief against Broward County, Broward County Administrator Bertha Henry, and Miami-Dade County are moot first because an Executive Order issued by Governor Ron DeSantis, Executive Order 2021-102, eliminated the mask mandates in the counties. Beyond that, the Florida Legislature has amended Florida Statute § 252.38 -- the provision governing the emergency powers of political subdivisions -- to add a number of restrictions on a local government's ability to impose future health-related emergency orders. Fla. Stat. § 252.38(4) (2021). These orders are now limited in duration to seven days; they can be renewed for a total of only forty-two days; they are subject to a strict scrutiny standard of review; and they are

subject to invalidation by the Governor. *Id.* In light of these essential changes in the law, there can be no reasonable expectation that Broward County, any administrator employed by the county, or Miami-Dade County will impose the same or even similar mandates as those in effect when Zinman initiated this suit -- in fact, they cannot do so except under exceedingly narrow circumstances. *See id.*; *cf. also Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1329 (11th Cir. 2004).

## B.  Damages

That brings us to Zinman's claims for damages. They are as doomed as his claims for injunctive and declaratory relief. Each theory is plainly foreclosed by binding caselaw.

### i. Title II

Zinman's claim for damages under Title II of the Civil Rights Act -- governing public accommodations -- fails because damages are not available under Title II. *See* 42 U.S.C. § 2000a. "A Title II suit is . . . private in form only. When a plaintiff brings an action under that Title, he cannot recover damages." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401–02 (1968) (per curiam); *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) ("Title II of the Civil Rights Act of 1964 permits injunctive relief only[.]" (citing *Newman*, 390 U.S. at 402)).

### ii. Title VI

Unlike under Title II, compensatory damages are available pursuant to Title VI of the Civil Rights Act, which prohibits

discrimination in any program that receives federal financial assistance.  *See* 42 U.S.C. § 2000d.  But to be entitled to this form of relief, a plaintiff must establish discriminatory intent.  *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 346 (11th Cir. 2012).  The Second Amended Complaint does not contain any allegations from which we could infer that NSU enacted its mask policy with discriminatory intent.  Zinman is not entitled to damages.

The only facts Zinman points to as evidence of discriminatory intent in the Second Amended Complaint are his conclusory assertions that the defendants intentionally discriminated against him. A complaint fails to satisfy Federal Rule of Civil Procedure 8(a)'s well-established pleading standard if it offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quotation marks and citation omitted).  That is Zinman's Second Amended Complaint in a nutshell.

Zinman's cite to the Supreme Court's decision in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–11 (2002), is misplaced.  There, the Supreme Court held that, in a Title VII case, a plaintiff need not satisfy all the elements of a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to meet his pleading burden and survive a motion to dismiss. *Swierkiewicz,* 534 U.S. at 511.  Zinman cannot invoke *Swierkiewicz*, however, to sidestep the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal*.  Like any other plaintiff,

he must still "set out enough 'factual content t[o] allow[ ] [a] court to draw the reasonable inference' that [defendant] is liable for the intentional . . . discrimination alleged." *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1023 (11th Cir. 2016) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). He has not done so here. Thus, for example, we know nothing about the claimed religions or nationalities of any of the supposedly "similarly situated" individuals to Zinman who were not required to wear masks. There is, in short, nothing in the Second Amended Complaint to allow the inference to be drawn that NSU was animated by discriminatory intent.

### iii. 42 U.S.C. § 1983

Zinman does not have standing to bring a § 1983 damages claim against Miami-Dade County because he has alleged no harm attributable to the conduct of the county. "The constitutional requirements of standing are that [1] the plaintiff must have suffered an injury in fact . . . . [2] there must be a causal connection between the injury and the conduct complained of . . . . and [3] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006) (alterations in original) (quotation marks and citation omitted). The only connection between Miami-Dade County and Zinman's injury is that Hard Rock Stadium -- the location of his law school graduation -- is within the county. But the injury (that Zinman wear a mask to graduation) is not traceable to the county because the county no longer had a mask mandate in

effect when Zinman graduated. Accordingly, the discussion in the remainder of this section applies only to Zinman's § 1983 damages claims against the other defendants.

We assume, without deciding, that NSU and SFS imposed their mask mandates as "State actors" under § 1983. *See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) ("[W]e must first determine whether [private defendants] are State actors because § 1983 only provides for claims to redress State action.").

**Free Exercise**. Zinman has failed to state a claim for a free exercise violation arising under the First Amendment because Zinman does not explain why the mask mandates were not neutral and generally applicable. Neutral rules of general application are subject only to rational basis review. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993). Under this standard, laws or policies are "presumed to be valid" and need only have a rational tie to a legitimate government interest. *Deen v. Egleston*, 597 F.3d 1223, 1230 (11th Cir. 2010) (citation omitted). The adoption of mask mandates easily passed this test: Broward County, its administrators, NSU, and SFS had a legitimate interest in limiting the spread of COVID-19, and they could have fairly relied on CDC guidelines regarding masking requirements.

**Free Speech**. Zinman has also failed to state a claim for a free speech violation because wearing a mask is not speech or expressive conduct protected by the First Amendment. Expressive conduct may fall within the ambit of the First Amendment if two

criteria are met: (1) there must be an "intent to convey a particularized message"; and (2) the likelihood must be great that "the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation omitted). The second prong asks "whether the reasonable person would interpret [the expressive conduct] as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (emphasis in original).

Zinman's claim fails the second prong. The likelihood is exceedingly remote and attenuated that a reasonable passerby observing Zinman without a mask on would interpret his unmasked status as an attempt to convey some sort of message. There are so many more probable explanations for a person's decision to go unmasked that have nothing to do with conveying any sort of message -- political, religious, or otherwise. Thus, for example, a person may not be masked for medical reasons, or because he left his mask at home, or perhaps just on account of a personal dislike for masking.

**Freedom of Assembly and Association**. Zinman has utterly failed to state a claim for a violation of his right to assemble or associate. Mask mandates do not prevent Zinman from associating with whomever he wants to associate with or assembling with anyone; he would simply have to be masked when doing so.

**Substantive Due Process**. Zinman offers two substantive due process claims: that mask mandates violate his fundamental

right to bodily integrity, and that they violate his right to freedom of movement. He is wrong on both counts. Substantive due process challenges to fundamental rights are subject to strict scrutiny review, while challenges that do not implicate fundamental rights are subject to rational basis review. *Doe v. Moore*, 410 F.3d 1337, 1343–1345 (11th Cir. 2005). The choice to not wear a mask does not fall within any fundamental right to bodily integrity. And mask mandates pass rational basis review, so Zinman's bodily integrity theory fails. Moreover, a mask requirement does not prevent Zinman from moving freely.

## C. Motion for Sanctions

Zinman also appeals the district court's denial of his motion for sanctions. We have carefully reviewed each of the statements Zinman suggests are false or misleading. None are. At bottom, Zinman's motion sought to convert routine legal arguments -- made every day by defense counsel in federal courts around the country -- into sanctionable conduct. It practically goes without saying that the district court acted well within its discretion in denying the motion. *See Zinman v. L.A. Fitness Int'l LLC*, No. 21-12385, 2022 WL 8019384, at *1 (11th Cir. Oct. 14, 2022) (concluding that Zinman's motion for sanctions against defense counsel in a similar case was frivolous and that the district court did not abuse its discretion in denying it).

## D. Motion for Protective Order

Finally, Zinman appeals the magistrate judge's grant of SFS's renewed motion for a protective order.  But Zinman did not appeal the magistrate judge's ruling to the district court, and we are "without jurisdiction to hear appeals directly from federal magistrates." *United States v. Schultz*, 565 F.3d 1353, 1359 (11th Cir. 2009) (citation omitted).  Thus, we lack jurisdiction to resolve Zinman's claim as to the protective order.

**AFFIRMED.**